DURST ET AL. *v.* UNITED STATES

No. 76–5935.   Argued December 5, 1977—Decided February 22, 1978

*Michael S. Frisch* argued the cause for petitioners *pro hac vice*.   With him on the brief was *Charles G. Bernstein.*

*Solicitor General McCree* argued the cause for the United States. With him on the brief were *Assistant Attorney General Civiletti, Deputy Solicitor General Frey, Marion L. Jetton, Jerome M. Feit,* and *Marshall Tamor Golding.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

We granted certiorari, 430 U. S. 929 (1977), to decide whether a trial judge (or designated United States Magistrate) who suspends a sentence of commitment and places a youth offender on probation pursuant to § 5010 (a) of the Federal Youth Corrections Act (YCA), 18 U. S. C. § 5005 *et seq.* (1976 ed.), may impose a fine, or require restitution, or both, as conditions of probation.[1]

Each of the five petitioners pleaded guilty in a separate proceeding before a United States Magistrate to an offense for which penalties of fine or imprisonment or both are provided. Petitioners Durst and Rice pleaded guilty to obstruction of the mails in violation of 18 U. S. C. § 1701 (1976 ed.). Petitioners Blystone and Pinnick pleaded guilty to stealing property with a value less than $100 from a Government reservation in violation of 18 U. S. C. § 661 (1976 ed.). Petitioner Flakes pleaded guilty to theft of property belonging to the United States with a value less than $100 in violation of 18

---

[1] Courts of Appeals have reached conflicting conclusions concerning whether a fine is a permissible condition of a § 5010 (a) sentence. The Court of Appeals for the Ninth Circuit, *United States* v. *Bowens,* 514 F. 2d 440 (1975); *United States* v. *Mollet,* 510 F. 2d 625 (1975), in disagreement with the Court of Appeals for the Fourth Circuit in the instant case, has held that imposition of a fine is improper. The Ninth Circuit, *United States* v. *Hayes,* 474 F. 2d 965 (1973), and the Fifth Circuit, *Cramer* v. *Wise,* 501 F. 2d 959 (1974), have held that a fine is not permissible in conjunction with a § 5010 (b) sentence. With respect to orders of restitution, however, the Courts of Appeals that have addressed the question, the Ninth Circuit in *United States* v. *Hix,* 545 F. 2d 1247 (1976), and the Third Circuit in *United States* v. *Buechler,* 557 F. 2d 1002 (1977), agree with the Court of Appeals in this case that an order of restitution properly may be imposed in conjunction with a sentence under § 5010 (a).

U. S. C. § 641 (1976 ed.). Each petitioner was sentenced by a Magistrate, under § 5010 (a), to probation and a suspended sentence of imprisonment.[2] Petitioner Flakes was ordered to pay a fine of $50 as a condition of probation and each of the others $100. Petitioner Durst was also ordered to make restitution, in the amount of $160, as a condition of probation.

Each petitioner appealed his sentence to the United States District Court for the District of Maryland, which consolidated and affirmed the appeals. Crim. Action No. N–75–0828 (June 25, 1976). The United States Court of Appeals for the Fourth Circuit affirmed in an unpublished *per curiam* opinion, No. 76–1905 (Dec. 9, 1976), judgt. order reported at 549 F. 2d 799, relying on its earlier decision in *United States* v. *Oliver,* 546 F. 2d 1096 (1976), cert. pending, No. 76–5632, which had held that imposition of a fine as a condition of probation was consistent with the YCA. In addition, the *per curiam* in the instant case stated: "For the reasons expressed in *Oliver,* we believe that a requirement of restitution is also consistent." App. 2. We agree that, when placing a youth offender on probation under § 5010 (a), the sentencing judge may require restitution, and, when the otherwise applicable penalty provision permits, impose a fine as a condition of probation, and therefore affirm the judgment of the Court of Appeals.

I

The YCA is primarily an outgrowth of recommendations of the Judicial Conference of the United States, see *Dorszynski* v. *United States,* 418 U. S. 424, 432 (1974), designed to reduce criminality among youth. Congress found that between the ages of 16 and 22, "special factors operated to produce habitual criminals. [Moreover,] then-existing methods of treating

---

[2] Rice, a young adult, was sentenced under § 5010 (a) pursuant to 18 U. S. C. § 4216 (1976 ed.), which permits sentencing of young adult offenders under the YCA in appropriate cases.

criminally inclined youths were found inadequate in avoiding recidivism." *Id.*, at 432–433 (citation omitted).

The core concept of the YCA, like that of England's Borstal System upon which it is modeled,[3] is that rehabilitative treatment should be substituted for retribution as a sentencing goal.[4] Both the Borstal System and the YCA incorporate three features thought essential to the operation of a successful rehabilitative treatment program: flexibility in choosing among a variety of treatment settings and programs tailored to individual needs;[5] separation of youth offenders from

---

[3] See S. Rep. No. 1180, 81st Cong., 1st Sess., 4 (1949); Prevention of Crime Act of 1908, 8 Edw. 7, ch. 59, pt. 1; The Criminal Justice Act of 1948, 11 & 12 Geo. 6, ch. 58; Criminal Justice Act of 1961, 9 & 10 Eliz. 2, ch. 39. For a discussion of the similarities between the Borstal System and the YCA, see Note, The Federal Youth Corrections Act: Past Concern in Need of Legislative Reappraisal, 11 Am. Crim. L. Rev. 229, 233–242 (1972).

[4] "The underlying theory of the bill is to substitute for retributive punishment methods of training and treatment designed to correct and prevent antisocial tendencies. It departs from the mere punitive idea of dealing with criminals and looks primarily to the objective idea of rehabilitation." H. R. Rep. No. 2979, 81st Cong., 2d Sess., 3 (1950).

[5] The Act provides that committed youth "shall undergo treatment in institutions of maximum security, medium security, or minimum security types, including training schools, hospitals, farms, forestry and other camps, and other agencies . . . of treatment." 18 U. S. C. § 5011 (1976 ed.). Moreover, it provides for the examination, classification, and periodic re-evaluation of youth on an individual basis in order to tailor the Act's programs to individual needs. See 18 U. S. C. §§ 5014–5017 (1976 ed.).

The basis for this emphasis on individualized and flexible treatment programs was the Borstal System which the Act emulated. That program was described in H. R. Rep. No. 2979, *supra*, at 5, as follows:

"[The Borstal System] now embraces 13 institutions. Some are walled. Others are completely open. Each institution has its own particular specialty.

"One provides complete facilities for trade training in metal and woodwork. Another is laid out and run as a summer camp with work and recreational programs which keep the boys out of doors. A third is

hardened criminals; [6] and careful and flexible control of the duration of commitment and of supervised release. [7] The YCA established the framework for creation of a treatment

largely devoted to agriculture and stock raising. One institution graduates skilled workers in the building trades.

"While the institutions differ in many respects, they have certain things in common. . . .

"Second, an individual plan based on close acquaintance with individual needs and antecedents and calculated to return the young men to society as social and rehabilitated citizens.

> .         .         .         .         .

"Three cardinal principles dominate the system: (1) flexibility, (2) individualization, and (3) emphasis on the intangibles."

[6] "By herding youth with maturity, the novice with the sophisticate, the impressionable with the hardened, and by subjecting youth offenders to the evil influences of older criminals and their teaching of criminal techniques, without the inhibitions that come from normal contacts and counteracting prophylaxis, many of our penal institutions actively spread the infection of crime and foster, rather than check, it." H. R. Rep. No. 2979, *supra*, at 2–3.

[7] The statement of Mr. Bennett, the Director of the Bureau of Prisons, before the Senate Subcommittee explained the need for an indeterminate sentence with discretion vested in the Youth Corrections Division of the Bureau to release the offender at the appropriate time. Mr. Bennett said:

"From the hundreds of cases of this type which have come across my desk I have formed the conclusion that in the task of correcting the offender the crucial element is that of time. Attitudes, habits, interests, standards cannot be changed overnight. Training in work habits and skills requires time. Once the individual has received the maximum benefit from the institutional program, however, it is just as important that his release to the community be effected promptly. In the case of each person confined there comes a period when he has his best prospects of making good in the community. His release should occur at this time. If he is released earlier he will not be ready for the task of establishing himself; if later, he may have become bitter, unsure of himself, or jittery like the athlete who is overtrained.

"Rarely does a day go by in one of our institutions for younger offenders without a youth being received whose sentence is either far too long or far too short, if the institution is to carry out its objective of correctional

program incorporating these features, and, as an alternative to existing sentencing options, authorized a sentence of commitment to the Attorney General for treatment under the Act. *Dorszynski, supra,* at 437–440.

The Act contains four provisions regarding sentencing. Section 5010 (a) provides that "[i]f the court is of the opinion that the youth offender does not need commitment," imposition or execution of sentence might be suspended and the youth offender placed on probation. Sections 5010 (b) and (c) provide that, if the youth is to be committed, the court might "in lieu of the penalty of imprisonment otherwise provided by law," sentence the youth offender to the custody of the Attorney General for treatment and supervision. Section 5010 (d) provides that "[i]f the court shall find that the youth offender will not derive benefit from treatment under subsection (b) or (c)," the court may sentence the youth offender "under any other applicable penalty provision." [8]

---

treatment." Correctional System For Youth Offenders: Hearings on S. 1114 and S. 2609 before a Subcommittee of the Senate Committee on the Judiciary, 81st Cong., 1st Sess., 27 (1949).

Congress provided the Bureau with the flexibility sought by providing in § 5017 for flexible commitment periods responsive to individual needs and progress.

[8] Section 5010 provides in full:

"(a) If the court is of the opinion that the youth offender does not need commitment, it may suspend the imposition or execution of sentence and place the youth offender on probation.

"(b) If the court shall find that a convicted person is a youth offender, and the offense is punishable by imprisonment under applicable provisions of law other than this subsection, the court may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter until discharged by the Commission as provided in section 5017 (c) of this chapter; or

"(c) If the court shall find that the youth offender may not be able to derive maximum benefit from treatment by the Commission prior to the expiration of six years from the date of conviction it may, in lieu of the

A particularly valuable benefit for the offender sentenced under the YCA is the prospect of obtaining a certificate setting aside his conviction. A certificate automatically issues when a youth committed to the custody of the Attorney General under § 5010 (b) or § 5010 (c) is unconditionally released prior to expiration of the maximum sentence imposed. 18 U. S. C. § 5021 (a) (1976 ed.). In 1961, the YCA was amended to extend the benefit of a certificate to youths sentenced to probation under § 5010 (a) when the court unconditionally discharges the youth prior to expiration of the sentence of probation imposed. Act of Oct. 3, 1961, Pub. L. No. 87–336, 75 Stat. 750 (codified at 18 U. S. C. § 5021 (b) (1976 ed.)).

Petitioners make two arguments in support of their submission that sentencing judges choosing the option under § 5010 (a) of suspending sentence and placing the youth offender on probation may not impose a fine as a condition of probation.[9] First, they argue that the sentencing provisions of the YCA are alternatives to other sentencing provisions and

---

penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter for any further period that may be authorized by law for the offense or offenses of which he stands convicted or until discharged by the Commission as provided in section 5017 (d) of this chapter.

"(d) If the court shall find that the youth offender will not derive benefit from treatment under subsection (b) or (c), then the court may sentence the youth offender under any other applicable penalty provision.

"(e) If the court desires additional information as to whether a youth offender will derive benefit from treatment under subsections (b) or (c) it may order that he be committed to the custody of the Attorney General for observation and study at an appropriate classification center or agency. Within sixty days from the date of the order, or such additional period as the court may grant, the Commission shall report to the court its findings."

[9] Petitioners abandoned the contention contained in their petition for certiorari that a § 5010 (a) sentence may not be conditioned upon restitution. See n. 11, *infra*.

therefore a substitute for the penalties provided in the statute for violation of which the youth offender was convicted; since § 5010 (a) does not explicitly authorize the imposition of fines, sentencing judges have no authority to impose them when sentencing under that provision. Second, they argue that fines are necessarily punitive and their imposition therefore inconsistent with the rehabilitative goals of the YCA. Neither of these arguments has merit.

## II

The language of § 5010 (a) neither grants nor withholds the authority to impose fines or orders of restitution. Another provision of the YCA, however, § 5023 (a), incorporates by reference the authority conferred under the general probation statute to permit such exactions. Section 5023 (a) provides: "Nothing in [the Act] shall limit or affect the power of any court to suspend the imposition or execution of any sentence and place a youth offender on probation or be construed in any wise to amend, repeal, or affect the provisions of chapter 231 [§§ 3651–3656] of this title . . . relative to probation." Chapter 231 is the general probation statute and 18 U. S. C. § 3651 (1976 ed.) expressly provides, *inter alia:*

> "While on probation and among the conditions thereof, the defendant—
>
> "May be required to pay a fine in one or several sums; and
>
> "May be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had . . . ." [10]

---

[10] Section 3651 provides in relevant part:

"Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, any court having jurisdiction to try offenses against the United States when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the defend-

Petitioners argue, however, that the sentencing provisions contained in § 5010 are separate and distinct from each other and from any other penalty provision. Recognizing that § 5023 (a) makes § 3651 applicable to a § 5010 (a) sentence, they now concede [11] that restitution is a permissible condition of a probationary sentence under § 5010 (a), because § 3651 directly authorizes restitution without resort to any other penalty provision. On the other hand, a fine may be imposed under § 3651 only if the penalty provision of the offense under which the youth is convicted so provides.[12] Thus, a fine is not permissible in conjunction with a § 5010 (a) sentence because it requires resort to the offense penalty provision.

---

ant on probation for such period and upon such terms and conditions as the court deems best.

.     .     .     .     .

"While on probation and among the conditions thereof, the defendant—

"May be required to pay a fine in one or several sums; and

"May be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had . . . ."

[11] Petitioners apparently agree with the Court of Appeals for the Ninth Circuit which held in *United States* v. *Hix*, 545 F. 2d 1247 (1976), that a fine is inherently punitive but restitution is essentially rehabilitative. Brief for Petitioners 11. In their brief, petitioners argued that restitution is *not* a permissible condition of probation, however, because "[i]t is . . . a real concern that sentencing courts may use restitution as a vehicle to accomplish that which is not permitted by the statute. Further, since the Federal Youth Corrections Act is an exclusive sentencing statute, any sentence beyond the limits of the Act is improper." *Ibid.* During oral argument, petitioners expressly abandoned this argument, conceding that restitution is a permissible condition of probation because it is directly authorized by § 3651. Tr. of Oral Arg. 5, 8, 9.

[12] The Government conceded that § 3651 permits imposition of a fine "only when the underlying statute calls for fine and/or imprisonment." Tr. of Oral Arg. 12. We need not address the question suggested by this phrasing, that a fine may be imposed when the underlying offense statute provides only a penalty of imprisonment. Compare *id.*, with Letter from Francis Biddle to Francis E. Walter, quoted, *infra*, at 552.

Petitioners' arguments are refuted by the legislative history of the Act. The legislative history of § 5023 (a) clearly reveals that Congress intended thereby to preserve to sentencing judges their powers under the general probation statute when sentencing youth offenders to probation under § 5010 (a). The House Report accompanying S. 2609, 81st Cong., 1st Sess. (1949), the bill which was enacted as the YCA, makes that clear in stating:

"Under [the bill's] provisions, if the court finds that a youth offender does not need treatment, it may suspend the imposition or execution of sentence and place the youth offender on probation. Thus, the *power* of the court to grant probation *is left undisturbed* by the bill." (Emphasis added.) H. R. Rep. No. 2979, 81st Cong., 2d Sess., 3 (1950).

The same view was expressed during the House hearings on H. R. 2140, 78th Cong., 1st Sess. (1943), a bill whose youth corrections provisions were nearly identical to those of S. 2609 introduced in 1949. Judge Phillips, Chairman of the Subcommittee responsible for drafting model youth correction legislation to be sponsored by the Judicial Conference, emphasized that "[i]t leaves [the probation system] absolutely undisturbed," [13] for the intent of the Judicial Conference in

---

[13] The full statement of Judge Phillips' remark regarding the bill's effect on the probation system is as follows:

"Mr. Cravens. Does this bill in any way affect the so-called probation system?

"Judge Phillips. Not at all.

"Mr. Cravens. There is no attempt to disturb that?

"Judge Phillips. No sir; we found it was working well and concluded it ought not to be disturbed.

"Mr. Cravens. And this bill was drafted with that in mind?

"Judge Phillips. Yes, sir. It leaves it absolutely undisturbed." Federal Corrections Act and Improvement in Parole: Hearings on H. R. 2139 and H. R. 2140 before Subcommittee No. 3 of the Committee on the Judiciary, 78th Cong., 1st Sess., 37 (1943) (hereinafter 1943 House Hearings).

sponsoring the bill was to retain the existing options with respect to probation and adult punishment, while simply adding a new option of commitment for treatment. See 1943 House Hearings 34–37.

The legislative history of §§ 5010 (b) and 5010 (c) buttresses this understanding of the purpose of § 5023 (a). Those subsections provide that commitment to the custody of the Attorney General is "in lieu of the penalty of imprisonment otherwise provided by law." The words "of imprisonment" did not appear in the original bill recommended by the Judicial Conference in 1943. H. R. 2140, *supra,* tit. III, § 1 (a), reprinted in 1943 House Hearings 3. Addition of the words "of imprisonment" was recommended in a letter from Attorney General Biddle to the House Subcommittee. That letter, in which, according to the letter, members of the Judicial Conference concurred and which was read into the record at the Subcommittee hearings, explained the reason for adding the words "of imprisonment" as follows:

> "Sentence of the youth offender to the custody of the Authority should be a permissible alternative to a penalty of imprisonment otherwise provided by law *but not to a penalty of a fine.* It should, moreover, be possible for the court both to impose a fine and to sentence the offender to the custody of the Authority, where the law provides both fine and imprisonment as the penalties that may be imposed." (Emphasis added.) Letter from Francis Biddle to Francis E. Walter (June 7, 1943), reprinted in 1943 House Hearings 110–111.

When introduced, S. 2609, *supra,* which was enacted into law, contained the words "of imprisonment" recommended by Attorney General Biddle. This history of subsection (b) demonstrates that Congress added the words "of imprisonment" in order to preserve the pre-existing authority of judges to impose a fine in conjunction with commitment when the applicable penalty provision provided for a penalty of fine and

imprisonment. The fact that Congress contemplated that a sentence under subsections (b) and (c) would permit resort to the otherwise applicable penalty provision as authority for imposition of a fine, militates in favor of the same construction with respect to subsection (a). There is no reason to believe that Congress directed that the subsections should be treated differently in that respect.[14]

We conclude that Congress' purpose in adopting § 5023 (a), was to assure that a sentence under § 5010 (a) would not displace the authority conferred by § 3651 to impose fines and orders of restitution as conditions of probation.

With respect to petitioners' second argument, that fines are punitive and their imposition therefore inconsistent with the rehabilitative goals of the YCA,[15] it is sufficient answer that Congress expressed its judgment to the contrary in preserving the authority of sentencing judges to impose them as a condition of probation. Moreover, we are not persuaded that fines should necessarily be regarded as other than rehabilitative when imposed as a condition of probation. There is much force in the observation of the District Court:

"[A] fine could be consistent . . . with the rehabilitative intent of the Act. By employing this alternative [a fine

_____

[14] Petitioners argued that Congress may have intended to authorize imposition of a fine on one sentenced to commitment under subsection (b), yet to withhold such authority as to one sentenced to probation under subsection (a) based on the "qualitative" distinction between people sentenced under those subsections. Tr. of Oral Arg. 8. If that argument is based on a perceived distinction between the treatment needs of the two "classes" of youth offenders, it is without support in the history of the Act, and conflicts with the Act's emphasis on flexibility and individualization of treatment. See n. 5, *supra*. If the premise of the argument is that those sentenced to commitment merit a fine as punishment, while those sentenced to probation do not, it conflicts with the basic purpose of the Act to accord youth offenders rehabilitative treatment rather than retributive punishment. See n. 4, *supra*.

[15] See *ibid.*, and accompanying text.

and probation], the sentencing judge could assure that the youthful offender would not receive the harsh treatment of incarceration, while assuring that the offender accepts responsibility for his transgression. The net result of such treatment would be an increased respect for the law and would, in many cases, stimulate the young person to mature into a good law-abiding citizen." App. 36–37.

*Affirmed.*

MR. JUSTICE BLACKMUN took no part in the consideration or decision of this case.