UNITED STATES of America, Appellee,

v.

Joseph CALDER, Julius Calder, Thomas DiDonato and George Monge, Appellants.

Nos. 353, 382, 476 and 477, Dockets 80–1245, 80–1247, 80–1249 and 80–1281.

United States Court of Appeals, Second Circuit.

Argued Nov. 13, 1980.

Decided Feb. 10, 1981.

Rehearing and Rehearing In Banc Denied April 14, 1981.

Certiorari Denied April 20, 1981. See 101 S.Ct. 1984.

Kenneth Kaplan, New York City (Kaplan & Katzberg, New York City), for appellant Joseph Calder.

Harvey L. Greenburg, New York City, for appellant Julius Calder.

Gerald L. Shargel, New York City (Graham Hughes, New York City, of counsel, on the brief), for appellant Thomas DiDonato.

Barry Bassis, New York City (Legal Aid Society, Federal Defender Services Unit, New York City), for appellant George Monge.

Edward R. Korman, U. S. Atty., E. D. N. Y., Brooklyn, N. Y. (Thomas P. Puccio, U. S. Dept. of Justice, Attorney-in-Charge; Kenneth F. McCallion, Joel Cohen, Sp. Attys., Brooklyn, N. Y., of counsel), for appellee U. S.

Before WATERMAN, MANSFIELD and VAN GRAAFEILAND, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

This case involves the extortion of money from two bars with the descriptive names of "Guys and Dolls" and "Adam and Eve", located in midtown Manhattan. The proof, which we must view in the light most favorable to the Government, shows that, beginning in September 1978, Joseph Calder, accompanied by George Monge, extorted $300 weekly from each of these bars. There was evidence that the extortion continued for over a year, the take from each bar totalling approximately $15,000.

Eventually, the FBI was called upon for help, and it devised a plan to halt the extortion and to apprehend those responsible for it. The gist of this plan was that FBI agents would pose as members of a rival gang attempting to shake down the same bars. Through this ruse, the Government secured ample, properly-admitted evidence tying Joseph Calder's brother Julius and Thomas DiDonato to the extortion scheme.[1] On the night of October 31, 1979, all four

---

1. We find no merit in appellant DiDonato's argument that the evidence was insufficient to establish that he was a conspirator in the extortion scheme. His own statements showed him to be a person of authority in the extortion group, and this evidence was buttressed by properly-admitted testimony of his fellow conspirators.

appellants were arrested while in a car parked outside the Adam and Eve. Joseph Calder had just collected the weekly $300 payment and had informed the manager that he and DiDonato "would be around from now on" to pick up the money. Monge was carrying a pistol, and a baseball bat was found in the back seat of the car.

Appellants were convicted under the Hobbs Act, 18 U.S.C. § 1951, which makes federal offenses of robbery, extortion, and conspiracy to rob or extort, if they "in any way or degree" affect interstate commerce. The Calder brothers and Monge were convicted on two substantive counts and one conspiracy count; DiDonato was convicted on only the conspiracy count. Their principal argument on appeal is that the evidence was insufficient to show the impact on interstate commerce required by the statute and that District Judge Nickerson erred in instructing the jury on this point. We find no merit in either contention.

The Government proved that both bars purchased food and other items from firms in New Jersey, and that Adam and Eve, a "juice bar" without a liquor license, purchased de-alcoholized wine from a Canadian company. Extortion's effect upon such interstate commerce need only be minimal to give rise to Hobbs Act jurisdiction. *United States v. Augello*, 451 F.2d 1167 (2d Cir. 1971), *cert. denied*, 405 U.S. 1070, 92 S.Ct. 1518, 31 L.Ed.2d 802 (1972). "Given the sweeping power of Congress under the Commerce clause, ... particularly evident in the Hobbs Act, ... it is enough that the extortion 'in any way or degree' ... affects commerce, though its effect be merely potential or subtle." *Id.* at 1169–70 (citations omitted). Here, the resources of each bar were depleted by $15,000 in a period of one year. There can be little question that this depletion was sufficiently deleterious to the efficient operation of these establishments to affect, albeit potentially or subtly, their interstate transactions. This was sufficient to sustain Hobbs Act jurisdictions. *See United States v. Daley*, 564 F.2d 645, 649–50 (2d Cir. 1977), *cert. denied*, 435 U.S. 933, 98 S.Ct. 1508, 55 L.Ed.2d 530 (1978).

Judge Nickerson instructed the jury that if it found "beyond a reasonable doubt that the goods were purchased for 'Adam and Eve' and 'Guys and Dolls' in interstate or foreign commerce and that money or property was obtained from them by extortion, then, as a matter of law, interstate or foreign commerce was affected." The substance of this charge has been approved in this and other circuits on numerous occasions. *See, e. g., United States v. Augello, supra*, 451 F.2d at 1170; *United States v. Cerilli*, 603 F.2d 415, 423–24 (3d Cir. 1979), *cert. denied*, 444 U.S. 1043, 100 S.Ct. 728, 62 L.Ed.2d 728 (1980). It was for the court to determine as a matter of law the jurisdictional question of whether the alleged conduct affected interstate commerce; it was for the jury to determine whether the alleged conduct had in fact occurred. *See United States v. Ricciardi*, 357 F.2d 91, 94 (2d Cir.), *cert. denied*, 384 U.S. 942, 86 S.Ct. 1464, 16 L.Ed.2d 540 (1966).

The only other challenge to the verdict which merits comment involves the admission of certain evidence against Julius Calder. Julius Calder spent the day following his arrest in the Metropolitan Correctional Center, where he met a fellow inmate, Joseph Bennett. During a conversation with Bennett, Calder admitted that he had been shaking down a topless bar in Manhattan. Bennett had been indicted for conspiracy to transport stolen motor vehicles in interstate commerce. Although Bennett's attorney had discussed with the United States Attorney the possibility that his client might cooperate in the stolen car case, no cooperation agreement was entered into until November 16, 1979, some two weeks after the conversation between Calder and Bennett.

Citing *United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), Calder argues that his Fifth and Sixth Amendment rights were violated when the incriminating statement was admitted into evidence. We disagree. The Supreme Court held in *Henry* that the Government had deliberately elicited a jailhouse admis-

sion made by the appellant to a fellow inmate who was a paid informer working on a contingent fee basis. While holding the testimony of the informer to be inadmissible, the Court implicitly approved the admission of similar incriminating testimony by another of Henry's cell mates who was not a paid informer and had no arrangements to report on conversations with Henry. *Id.* at 267 n.3 and 274 n.13, 100 S.Ct. at 2185 n.3 and 2189 n.13. Bennett was not acting as a Government agent when he talked with Calder. Like the neutral witness in *Henry*, he was not disqualified.

■ Appellant Monge was fined $5,000 on Count One and sentenced as a youth offender to seven years in the custody of the Attorney General. Sentence was suspended on Count Two, and Monge was placed on probation for five years consecutive to Count One. Sentence also was suspended on Count Three, and Monge was placed on probation for three years consecutive to Count Two. Appellant Monge contends that the sentence under Counts Two and Three were improper.

In making this argument, Monge relies upon Ninth and Tenth Circuit holdings, which require sentences imposed on youth offenders under multi-count indictments to be consistent in order not to thwart the rehabilitative intent of the Youth Corrections Act. *See United States v. Magdaleno-Aquirre*, 590 F.2d 814, 815 (9th Cir. 1979); *United States v. Ortiz*, 513 F.2d 198 (9th Cir.), *cert. denied*, 423 U.S. 843, 96 S.Ct. 78, 46 L.Ed.2d 64 (1975); *Roddy v. United States*, 509 F.2d 1145, 1147 (10th Cir. 1975); *Price v. United States*, 384 F.2d 650, 652 (10th Cir. 1967). In *United States v. Ortiz*, the twenty-one year old defendant was sentenced under 18 U.S.C. § 5010(b) on a narcotics conspiracy count and was given a consecutive five-year sentence as an adult on the companion substantive count, with the sentence suspended and the defendant placed on probation. The court vacated the five-year sentence, holding that it was inconsistent for the district judge to treat the defendant as an adult, after having found

by implication that he would derive benefit from the rehabilitative treatment to be provided under the Youth Corrections Act.

The reasoning of the foregoing cases is not without merit. However, it does not apply to our case. Judge Nickerson did not impose sentence under Counts Two and Three. He suspended the imposition of sentence and simply placed the defendant on consecutive terms of probation. This he was permitted to do by the express language of the Act.

Section 5023 provides that nothing in the Act "shall limit or affect the power of any court to suspend the imposition or execution of any sentence and place a youth offender on probation . . . ." It also provides that the Act shall not be construed to repeal or amend the provisions of the general probation chapter, section 3651 of which permits a court to suspend the imposition or execution of sentence and place the defendant on probation. *See Durst v. United States*, 434 U.S. 542, 543–44, 549–50, 98 S.Ct. 849, 850, 853, 55 L.Ed.2d 14 (1978); *United States v. Buechler*, 557 F.2d 1002, 1006 (3d Cir. 1977).

Commitment under sections 5010(b) and 5010(c) is "in lieu of the penalty of imprisonment otherwise provided by law." *Durst v. United States, supra*, 434 U.S. at 552, 98 S.Ct. at 854. When a court imposes probation and suspends the imposition of sentence, he is not sentencing the defendant to prison. In the strict sense of the word, he is not "sentencing" the defendant at all. *See Dunn v. United States*, 561 F.2d 259, 261 (D.C.Cir.1977); *United States v. Chappell*, 480 F.Supp. 321, 324 (W.D.Okl.1978). Assuming, for the argument, that sentences imposed on all counts in a youth offender case must be consistent, it does not necessarily follow that sentence must be imposed on all counts. The imposition of probation may be a proper exercise of the "flexibility [allowed a district judge] in choosing among a variety of treatment settings and programs tailored to individual needs." *Durst v. United States, supra*, 434 U.S. at 545, 98 S.Ct. at 851. Like the fines and orders of restitution approved by the Court in *Durst*, suspension of sentence and probation may,

in a particular case, be consistent with the rehabilitative intent of the Act.

The judgments are affirmed.

MANSFIELD, Circuit Judge (Concurring in part and dissenting in part):

I concur in all of Judge Van Graafeiland's carefully considered and well-reasoned opinion except that portion upholding the district court's placement of defendant Monge on probation for periods beyond the seven-year term imposed upon him as a youth offender pursuant to 18 U.S.C. § 5010(c).[1] In my view the court was precluded by 18 U.S.C. § 5017(d)[2] from placing Monge on probation for the additional periods totalling five years beyond the seven-year term.

The district court was clearly authorized by § 5010(c) to impose a seven-year prison term on Monge. Indeed Judge Nickerson could pursuant to § 5010(c) have imposed concurrent terms upon Monge as a youth offender of up to 20 years on Counts 2 and 3, as authorized by 18 U.S.C. § 1951. In the alternative, the district court could pursuant to § 5023[3] have suspended the imposition or execution of sentence and placed Monge as a youth offender on probation. However, once the district court chose to impose a prison sentence on Monge, the sentence became subject to the terms of § 5017(d), which provides that a youth offender "shall be discharged *unconditionally* on or before the expiration of the maximum sentence imposed, computed uninterruptedly from the date of conviction." (Emphasis supplied).

As Judge Van Graafeiland correctly notes, the imposition of probation under Counts 2 and 3 for terms extending beyond the seven-year sentence imposed on Monge as a youth offender under Count 1 was not strictly a "sentence" of the defendant. However, it clearly placed a "condition" on the discharge of Monge upon expiration of the maximum sentence (seven years) imposed on him as a youth offender under Count 1. The probation terms therefore violated § 5017(d).

I would vacate the probation terms imposed on Monge on Counts 2 and 3 and remand the case for sentencing on these two counts. Upon such a remand Monge would face the risk that Judge Nickerson, upon learning that he was powerless to impose probation consecutively to the discharge of Monge as a youth offender, might decide that he was justified under the circumstances in imposing prison terms on these counts exceeding the seven-year period imposed on Count 1. See *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1968).

1. Section 5010(c) provides:

   "(c) If the court shall find that the youth offender may not be able to derive maximum benefit from treatment by the Commission prior to the expiration of six years from the date of conviction it may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter for any further period that may be authorized by law for the offense or offenses of which he stands convicted or until discharged by the Commission as provided in section 5017(d) of this chapter."

2. Section 5017(d) provides:

   "(d) A youth offender committed under section 5010(c) of this chapter shall be released conditionally under supervision not la-

ter than two years before the expiration of the term imposed by the court. He may be discharged unconditionally at the expiration of not less than one year from the date of his conditional release. He shall be discharged unconditionally on or before the expiration of the maximum sentence imposed, computed uninterruptedly from the date of conviction."

3. Section 5023(a) provides:

   "(a) Nothing in this chapter shall limit or affect the power of any court to suspend the imposition or execution of any sentence and place a youth offender on probation or be construed in any wise to amend, repeal, or affect the provisions of chapter 231 of this title or the Act of June 25, 1910 (ch. 433, 36 Stat. 864), as amended (ch. 1, title 24, of the D. of C. Code), both relative to probation."