UNITED STATES of America, Plaintiff-Appellee,

v.

Juan Carlos DURAN, Jorge Duran-Garcia, Defendants-Appellants.

No. 81–5759.

United States Court of Appeals, Eleventh Circuit.

Sept. 30, 1982.

Steven E. Kreisberg, Miami, Fla., for Duran.

Luis Cruz (Court-Appointed), Miami, Fla., for Duran-Garcia.

**350**

Michael W. Burnbaum, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before HILL and CLARK, Circuit Judges, and SCOTT *, District Judge.

JAMES C. HILL, Circuit Judge:

On April 8, 1981, Juan Carlos Duran and his father Jorge Duran-Garcia were traveling together from Colombia to Miami, Florida with a single suitcase.[1] Shortly after their arrival at the Miami International Airport, customs officials discovered approximately one kilogram of virtually pure cocaine carefully concealed in the inner panels of their suitcase. When questioned by Drug Enforcement Agents, Juan Carlos Duran stated that the suitcase was his and had been borrowed from a friend; however, the name of Jorge Duran-Garcia appeared on the attached luggage tag, and the clothes of both father and son were in the suitcase. As a result, both were charged in a three count indictment with importing a controlled substance in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 18 U.S.C. § 2, possession with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and conspiring to import and possess a controlled substance with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 846, 952(a), 960(a)(1).

Juan Carlos Duran pled guilty to the conspiracy count and the remaining counts were dismissed. The district court chose to sentence him as an adult despite the fact that he was only eighteen years old at the time of sentencing. Duran was sentenced to six years in prison and now appeals his sentence under the Youth Corrections Act.

18 U.S.C. § 5005 *et seq.* Jorge Duran-Garcia was tried and convicted on all three counts. He also was sentenced to a six year prison term and now appeals the validity of his conviction, arguing that the Government failed to proffer sufficient evidence to prove that he knew his son was carrying cocaine in the suitcase. For the reasons developed below, we affirm both actions of the district court.

■ Essentially, Duran-Garcia maintains that his son was solely responsible for the drug transport. Indeed, at trial Duran testified that he had been hired by a man in Colombia to transport the cocaine to a contact in Miami. Duran further testified that his father was unaware of the suitcase's contents, and that he, and not his father, had written his father's name on the luggage tag in the event that the bag was lost. The Government, however, introduced much circumstantial evidence pointing to the fact that Duran-Garcia was at least a joint owner of the suitcase, and as such was presumed to know its contents. For example: the suitcase contained the clothing of both men, even though they intended to depart from Miami in different directions; both the permanent tag on the luggage as well as the temporary flight ticket bore the Duran-Garcia's name;[2] all customs forms were signed by the father, and a hotel slip found among Duran-Garcia's belongings indicated that he had left a hotel in Barranquilla, Colombia the morning of his arrest with an empty suitcase.[3]

At the conclusion of the Government's presentation, Duran-Garcia moved for a Judgment of Acquittal. The motion was denied and the defendant went on to

---

* Honorable Charles R. Scott, U. S. District Court Judge for the Middle District of Florida, sitting by designation.

1. Jorge Duran-Garcia also carried a briefcase containing some work papers and brochures. Duran-Garcia was a sales representative who traveled often, but claimed to have lost his only suitcase on an earlier flight.

2. Although Duran-Garcia and his son arrived in Miami on an Avianca flight, the permanent tag was from Braniff Airlines and the temporary tag was from Eastern Airlines.

3. Apparently, Duran-Garcia traveled from Bogota, Colombia to Miami via Barranquilla. He testified that he went to Barranquilla without his son to collect money and to deliver a borrowed suitcase to a cousin of his wife. The cousin, however, was in Europe at the time.

present his own witnesses.[4] This may have been a tactical error because, in the view of the trial judge, "the defendant's credibility was badly shaken." Record, at 157. The trial therefore boiled down to a battle between the credibility of Duran-Garcia and his son, on one hand, and the Government's circumstantial evidence on the other. The jury chose not to believe the father and son, and convicted Duran-Garcia. Under the proper standard of review, this verdict must be upheld "if there is substantial evidence, taking the view most favorable to the government to support it." *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *see also Hamling v. United States*, 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974). After carefully reviewing the trial record, in a light most favorable to the Government, we are convinced that sufficient evidence was introduced to support the jury's verdict. The conviction of Jorge Duran-Garcia therefore is affirmed.

█ A more difficult question arises with respect to the appeal of Juan Carlos Duran. At his sentencing hearing before the district court, Duran asked to be sentenced under the Youth Corrections Act. Because he was eighteen years old at the time of his offense and sentencing, the option of sentencing under the Act was open to the district judge. 18 U.S.C. § 5006(d) (defining a "youth offender" as a person under the age of twenty-two years at the time of conviction). However, sentencing under the Youth Corrections Act is not mandatory, 18 U.S.C. § 5010(d), and in rejecting the applicability of youth sentencing, the district judge stated:

> The Defendant, having been adjudicated guilty pursuant to his plea of guilty, as to Count III, the Defendant having taken the stand and testified as to his guilt, the Court having reviewed the Presentence Report, together with the matters submitted, and heard allocution, the Court finds that in view of the amount of cocaine, purity of the cocaine, that it would not be appropriate to sentence the Defendant under the Youth Corrections Act. . . .

Sentencing Transcript at 5–6.

█ The Federal Youth Corrections Act is a comprehensive sentencing statute designed to provide flexibility in the treatment of youth offenders convicted in federal court.[5] The thrust of the legislation is to

---

4. The defendant renewed his Judgment for Acquittal at the conclusion of his own presentation.

5. The sentencing provision of the Act reads as follows:

> (a) If the court is of the opinion that the youth offender does not need commitment, it may suspend the imposition or execution of sentence and place the youth offender on probation.
>
> (b) If the court shall find that a convicted person is a youth offender, and the offense is punishable by imprisonment under applicable provisions of law other than this subsection, the court may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter until discharged by the Commission as provided in section 5017(c) of this chapter; or
>
> (c) If the court shall find that the youth offender may not be able to derive maximum benefit from treatment by the Commission prior to the expiration of six years from the date of conviction it may, in lieu of the penalty of imprisonment otherwise provided by

> law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter for any further period that may be authorized by law for the offense or offenses of which he stands convicted or until discharged by the Commission as provided in section 5017(d) of this chapter.
>
> (d) If the court shall find that the youth offender will not derive benefit from treatment under subsection (b) or (c), then the court may sentence the youth offender under any other applicable penalty provision.
>
> (e) If the court desires additional information as to whether a youth offender will derive benefit from treatment under subsections (b) or (c) it may order that he be committed to the custody of the Attorney General for observation and study at an appropriate classification center or agency. Within sixty days from the date of the order, or such additional period as the court may grant, the Commission shall report to the court its findings.

18 U.S.C. § 5010.

place more of an emphasis on rehabilitation than generally is provided under adult sentencing procedures. *See Ralston v. Robinson*, 454 U.S. 201, 102 S.Ct. 233, 237–38, 70 L.Ed.2d 345 (1982); *Durst v. United States*, 434 U.S. 542, 545–46, 98 S.Ct. 849, 851–52, 55 L.Ed.2d 14 (1978). *See generally Dorszynski v. United States*, 418 U.S. 424, 431–36, 94 S.Ct. 3042, 3046–49, 41 L.Ed.2d 855 (1974). To achieve this objective, the Act affords a district judge two additional sentencing options when the convicted offender is under twenty-two years of age.[6] The judge may either commit the youth to the custody of the Attorney General for treatment under the Act pursuant to 18 U.S.C. §§ 5010(b) and (c), or the youth may be placed on probation as prescribed in 18 U.S.C. § 5010(a). In addition, the Act also provides that a district judge may reject sentencing under the Act with respect to a particular youth offender. This third option is incorporated in section 5010(d) and reads as follows:

> If the court shall find that the youth offender will not derive benefit from treatment under subsection (b) or (c), then the court may sentence the youth

offender under any other applicable penalty provision.

18 U.S.C. § 5010(d).

 Although the Act contemplates that the unfettered discretion of a sentencing judge is to be preserved, section 5010(d) has been construed to require an express finding that a particular youth offender would not benefit under the Act before alternative sentencing routes are pursued. *Dorszynski, supra; United States v. Tobias*, 662 F.2d 381 (5th Cir. 1981); *Hoyt v. United States*, 502 F.2d 562, 563 (5th Cir. 1974).[7] This requirement is necessary to "insure that the sentencing judge exercised his discretion in choosing not to commit a youth offender to treatment under the Act." *Dorszynski*, 418 U.S. at 443, 94 S.Ct. at 3052. However, because the Act was not designed to circumscribe the sentencing discretion,[8] a judge is not required to give reasons supporting his decision not to employ the Act. *Walls v. United States*, 544 F.2d 236, 237 (5th Cir. 1976); *e.g., United States v. Hall*, 525 F.2d 970 (5th Cir. 1976). Thus, the Supreme Court concluded in *Dorszynski* that

> [l]iteral compliance with the Act can be satisfied by any expression that makes

**6.** Actually the option of sentencing under the Federal Youth Corrections Act extends to anyone who has not attained twenty-six years of age. 18 U.S.C. § 4216. The sentencing process, however, differs in some respects between those defendants catagorized as young adult offenders (ages 22–26) and youth offenders (under age 22). *See* note 7 *infra*. Because Duran was eighteen years of age at the time of his conviction 18 U.S.C. § 5010, which governs the sentencing of youth offenders, is the focus of our attention.

**7.** It should be noted that, although an express no benefit finding is required when a defendant is under 22 years of age, a similar finding is not required when a defendant is between 22 and 26 years of age. *Brown v. United States*, 551 F.2d 619 (5th Cir. 1977); *Mitchell v. United States*, 547 F.2d 875 (5th Cir. 1977). *Compare* 18 U.S.C. § 5010(d) ("the court shall find that the youth offender will not derive benefit . . .") *with* 18 U.S.C. § 4216 (allowing youth sentencing for young adult offenders if "the court finds that there are reasonable grounds to believe that the defendant will benefit . . ."). Because all of the cases cited by the Government to support its position that a "no-benefit" finding was not required dealt with defendants be-

tween 22 and 26 years of age, they will be disregarded for purposes of this appeal.

**8.** As the Supreme Court stated in *Dorszynski*:

> The legislative history of the Act confirms the conclusion that Congress did not intend to alter or circumscribe the sentencing discretion of federal district judges by requiring that any substantive standard be met before the imposition of sentence. There is virtual unanimity of opinion in the legislative history that the Act was intended to increase the sentencing options of federal trial judges, rather than to limit the exercise of their discretion whether to employ the newly created options.
>
> To construe § 5010(d)'s requirement of a "no benefit" finding to circumscribe that discretion would be incompatible with a clear congressional intent; such a construction would also be at odds with traditional sentencing doctrine. The intent of Congress was in accord with long-established authority in the United States vesting the sentencing function exclusively in the trial court.

418 U.S. at 439–40, 94 S.Ct. at 3050–51; *see also Ralston, supra*, 102 S.Ct. at 237, 238.

clear the sentencing judge considered the alternative of sentencing under the Act and decided that the youth offender would not derive benefit from treatment under the Act.

418 U.S. at 444, 94 S.Ct. at 3053.

■ We are persuaded that the court's statement indicating that youth sentencing would not be appropriate for Duran satisfies this minimum standard of compliance. Although the court's no benefit finding probably should have been made with greater clarity and directness, *see Hoyt v. United States*, 502 F.2d 562, 563 (5th Cir. 1974), we, somewhat reluctantly, are bound to uphold the legitimacy of its finding on the basis of *United States v. Hall*, 525 F.2d 970 (5th Cir. 1976). In *Hall*, a similar perfunctory statement was held by the former Fifth Circuit to satisfy the requirement of a no benefit finding under section 5010(d) of the Act. 525 F.2d at 972.[9] The only distinction between the perfunctory finding in *Hall* and the statement of inappropriateness in the present case is that in sentencing Duran the court went one step further. In an attempt to justify its rejection of the youth sentencing option, the court suggests that the nature of Duran's offense (the amount and purity of the cocaine) was one of the factors in its no benefit finding.

■ Undue reliance on the nature of the defendant's crime can be improper justification for a no benefit finding. *See, e.g., United States v. Tobias*, 662 F.2d 381, 388 (5th Cir. 1981); *United States v. Hartford*, 489 F.2d 652, 655 (5th Cir. 1974). This is because when determining whether a youth may benefit from the Act, the focus of the inquiry should not be on the crime committed, but rather on the individualized record of the defendant. *Id.* The crime may be relevant to the extent that it reflects on the character of the defendant, *c.f. United States v. Wright*, 593 F.2d 105, 109 (9th Cir. 1979) (association with undesirable characters is a permissible consideration), but the sentencing emphasis must be on the individual. Individualization is especially important when a youth offender is the subject of sentencing. *Hartford, supra; see United States v. Ingram*, 530 F.2d 602, 604 (4th Cir. 1976). Thus, we would agree with Duran that if the amount and purity of the transported cocaine was the sole basis for the court's no benefit finding, that finding would be improper. It would be improper because the court would be saying in effect that a juvenile who transports a kilogram of virtually pure cocaine can never be subject to youth sentencing. Such a position is a *per se* rule contrary to the intent of Congress that a sentencing court exercise its discretion. *See, e.g., United States v. Sparrow*, 673 F.2d 862, 866 (5th Cir. 1982);[10] *United States v. Menghi*, 641 F.2d 72 (2d Cir.), *cert. denied*, 451 U.S. 975, 101 S.Ct. 2058, 68 L.Ed.2d 356 (1981); *United States v. Hartford, supra*, 489 F.2d at 655–56. Moreover, when a sentencing court fails to exercise its discretion, the sentence

---

**9.** The no-benefit finding affirmed in *Hall* was as follows:

Sentence of law and judgment of the Court—David Lee Hall be and he is hereby committed to the custody of the Attorney General or lawfully authorized representative for confinement for a period of five years or until he is sooner discharged by due process of law and in imposing sentence the Court has carefully considered the Youth Act but has rejected its application as being not indicated. 525 F.2d at 972. As a former Fifth Circuit decision *Hall* also is binding on this court. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

**10.** In *United States v. Sparrow*, the new Fifth Circuit appears to depart from the holding in *Hall* with its statement,

"Although the District Court uttered the magic words ("I do not think that he will profit by treatment as a juvenile"), their mere incantation does not suffice to ward off the evil spirits of appellate review." 673 F.2d at 866. The Fifth Circuit opinion, however, fails to make any reference to *Hall.* But more importantly the type of review which took place in *Sparrow* is precisely the type of review we also have suggested is proper, that is whether the sentencing court exercised discretion at all. In *Sparrow*, the record made clear that in the eyes of the sentencing judge "*anyone* nineteen years of age, no longer a juvenile since he can both vote and sit on a jury, would not be benefited by the FYCA." *Id.* Thus, the judge adopted an inappropriate *per se* approach to sentencing which precluded the exercise of its discretion.

may be the subject of appellate review. *Dorszynski*, 418 U.S. at 433, 94 S.Ct. at 3048.

■ We are not convinced, however, that the amount and purity of the cocaine found in this suitcase was the sole basis for the court's rejection of youth sentencing. Indeed, a closer reading of the record suggests that the trial court also considered Duran's presentence report, all matters submitted by counsel, and the statements made by Duran and his counsel at the presentence hearing. Sentencing Transcript at 6. In addition, the sentencing judge also had the benefit of hearing Duran's testimony at his father's trial. In light of these additional considerations, it is difficult, if not inappropriate, for us to discern the true motive guiding the imposition of Duran's sentence. As discussed above, if the district court's rejection of youth sentencing had been without justification, we would be compelled to uphold its determination. To overturn Duran's sentence not only would be an anomalous result, but also would extend appellate review of sentencing beyond permissible bounds.[11] Bearing in mind our proper role in the review of district court sentencing, and the fact that the Federal Youth Corrections Act was intended to increase rather than inhibit sentencing discretion,

WE AFFIRM.

CLARK, Circuit Judge, concurring in part and dissenting in part:

I concur in the conviction of Jórge Duran-Garcia. I dissent with respect to the sentencing procedure applied by the district court in arriving at the sentence of the youth offender, Juan Carlos Duran. The law is clear that the court should make an express finding that a particular youth offender would not benefit under the Act. My best divining rod does not provide me any information that this was done here. We are diluting the law on this subject by

approving this equivocal district court order. I would remand for resentencing of Duran.

---

11. In *Dorszynski*, the court clearly stated, "Once it is made clear that the sentencing judge has considered the option of treatment under the Act and rejected it, ... no appellate review is warranted." 418 U.S. at 443; *see Robinson v. United States*, 536 F.2d 1109 (5th Cir. 1976).