**STATE of Iowa, Appellee,**

v.

**Charles Douglas NELSON, Appellant.**

**No. 66645.**

Supreme Court of Iowa.

Oct. 27, 1982.

Francis C. Hoyt, Jr., Appellate Defender, and Charles L. Harrington, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Roxann M. Ryan, Asst. Atty. Gen., and Steven S. Hoth, Des Moines County Atty., for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, McGIVERIN, LARSON, and CARTER, JJ.

HARRIS, Justice.

In his appeal from a first-degree murder conviction, Iowa Code § 707.2 (1979), defendant assigns error in the trial court's refusal to suppress statements defendant made to a fellow jail inmate. We affirm the trial court.

On October 13, 1980, defendant was arrested and charged with murder. The sordid facts need not be detailed as they are not at issue on appeal. Defendant was held on the charge during the first part of December, 1980, when Gerald Jackson was also incarcerated on a forgery charge in the same jail. During the latter part of Jackson's incarceration he was in a cell adjacent to defendant. During conversations sometime during the period from December 4 to December 6 defendant made inculpatory statements to Jackson about the murder charge he was facing.

Jackson, a former employee of the department of criminal investigation (DCI), slipped a note to the jailer on December 5 which stated Jackson wanted to discuss defendant's incriminating statements with police officers. The jailer passed the note on to Deputy Sheriff William Ferrill. Ferrill came to the jail and met with Jackson on December 7.

Jackson and Ferrill both testified of the conversation and their testimony was conflicting. The findings of the trial court, to some extent, differed from either version.

Our review of this constitutional claim is de novo. *State v. Boone,* 298 N.W.2d 335, 337–38 (Iowa 1980). Upon review we determine the facts to be as follows.

When Jackson told Ferrill of defendant's statements, Ferrill said he would put him in touch with the police officer in charge of the investigation. He made no promise to Jackson in return for the information. We find he did not direct Jackson to endeavor to gather any further information. He merely had Jackson return to his cell to continue in the same capacity as an inmate. Although Jackson contends otherwise there was nothing said in the conversation which should have led Jackson to believe he was assigned or designated to gather further information for the State. Ferrill obviously knew further conversations were likely but Jackson's capacity was unchanged. He remained an inmate with information he wanted to pass along. The only difference is that the State knew it. The crux is that the State had not "put him up to it."

Further incriminatory statements made by Nelson that night and the following morning are the principal subject of this appeal. After Jackson returned to his cell he and Nelson engaged in extensive conversations both on the evening of December 7 and the early morning of December 8. Jackson gathered information which was very damaging which he later related at defendant's trial. There was other evidence to convict defendant, but Jackson's testimony, including the inculpatory statements of December 7 and 8, could well have been decisive in the jury's determination of guilt.

There is no question about Jackson's capacity thereafter. Ferrill did contact other law enforcement personnel and on December 8 Jackson met with a DCI agent and a police captain. On December 9 Deputy Ferrill had a second meeting with Jackson and discussed the possibility that Jackson could work for the State on unrelated cases. That night the jailer overheard conversations between Jackson and the defendant which included defendant's confession. On December 11 Jackson was released from jail

in order to work for the State on unrelated cases.

The trial court suppressed all statements made by defendant after December 8, 1980, concluding that by December 9 and 10, 1980, Jackson "assumed the role of a state agent unknown to the defendant." Under authority of *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), the trial court ruled the statements made after December 8 were obtained in violation of Nelson's right to counsel and were therefore inadmissible.

In *Henry* the United States Supreme Court held that a defendant's sixth amendment right to assistance of counsel was violated by the admission at trial of incriminating statements Henry made to his cell mate, an undisclosed government informant. *Henry* proceeded from *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). In that case the court held Massiah's sixth amendment rights were violated by admission of incriminating statements he made in the absence of counsel to a confederate who was acting as a government informant. In both *Henry* and *Massiah* the evidence was held inadmissible because the government informant "deliberately elicited" the incriminating statements.

In *Henry* three factors were listed as important in determining whether an informant "deliberately elicited" incriminating information: (1) was the witness acting under instructions as a paid informant for the prosecution; (2) was the informant ostensibly no more than a fellow inmate of the accused; and (3) was the accused in custody and under indictment at the time of the conversations. 447 U.S. at 270, 100 S.Ct. at 2187, 65 L.Ed.2d at 122. Nelson's claim fails under the first factor. Jackson does not qualify as a state agent at the time in question.

Jackson seems to have been one of those shadowy figures often observed ranging back and forth at the boundary between order and lawlessness. He was known to the department of criminal investigation though apparently not to Ferrill. There is nothing to indicate he had an ongoing relationship with the State as a paid informant. He testified he at one time did "work for" the DCI, but the record does not indicate for how long, in what capacity, or when that "work" took place.

There is nothing to indicate Jackson had an agreement that he would be paid or would receive more favorable treatment for the information. At the time Jackson heard the statements he related at trial he seems to have had no arrangement to work for the State on the unrelated cases. This contrasts with the informant who testified against Henry. Henry's informant had been paid for over a year on a contingent fee basis. 447 U.S. at 270 n. 7, 100 S.Ct. at 2187 n. 7, 65 L.Ed.2d at 122 n. 7.

Jackson initiated the contracts with the State. This also contrasts with the informant in *Henry* who was approached by the federal bureau of investigation. This distinction has been thought to be crucial. *See United States v. Van Scoy,* 654 F.2d 257, 259–60 (3rd Cir. 1981); *United States v. Calder,* 641 F.2d 76, 78–79 (2nd Cir. 1981), cert. denied, 451 U.S. 912, 101 S.Ct. 1984, 68 L.Ed.2d 302 (1981).

In summary we do not believe the statements which were the subject of Jackson's testimony were gathered by him at the time he was working for the State. Jackson was imprisoned on check charges and it appears only a coincidence that he ended up in a cell in close proximity to Nelson. Because Jackson was not thus working for the State it cannot be said the statements were deliberately elicited within the proscription of *Henry.* The trial court did not err in admitting them.

AFFIRMED.