**UNITED STATES of America, Appellee,**

v.

**Joseph Anthony MENGHI, Randy Thomas Hilgert and Debra Lee Zidbeck, Appellants.**

**Nos. 615, 633, 634, Dockets 80–1317, 80–1319, 80–1321.**

United States Court of Appeals, Second Circuit.

Argued Jan. 13, 1981.

Decided Feb. 9, 1981.

Rehearing and Rehearing In Banc Denied April 21, 1981.

Certiorari Denied May 4, 1981.
See 101 S.Ct. 2058.

---

**8.** Note 1 *supra.*

**9.** See notes 3 and 4 *supra.*

Holly B. Fitzsimmons, Asst. U. S. Atty., Bridgeport, Conn. (Richard Blumenthal, U. S. Atty., New Haven, Conn., of counsel), for appellee.

Kevin J. Acton, New Haven, Conn., of counsel, for appellant Menghi.

R. William Bohonnon, New Haven, Conn., of counsel, for appellant Hilgert.

Brenda A. Eckert, Hartford, Conn. (Shipman & Goodwin, Hartford, Conn., of counsel), for appellant Zidbeck.

Before MOORE, MANSFIELD and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

The defendants Randy Hilgert, Joseph Menghi and Debra Zidbeck have appealed judgments of conviction entered on June 6, 1980 after a trial before Judge Warren W. Eginton. The three appellants (a fourth defendant was acquitted) were convicted by a jury of conspiracy to distribute cocaine in violation of Title 21, United States Code, § 841(a)(1). Menghi was also convicted in a second count against him of using a communication facility to facilitate the commission of a felony under the laws of the United States as prohibited by 21 U.S.C. § 843(b). Menghi was sentenced to one year on each count; execution was suspended on the second count with probation of one year to commence upon the completion of the count one sentence. Hilgert was sentenced to one year imprisonment. Zidbeck was sentenced to three years imprisonment, but execution was suspended and she was placed on probation for three years. The sentencing judge found that Zidbeck would not be amenable to treatment under the Federal Youth Corrections Act, 18 U.S.C. §§ 5005–5026. The convictions are affirmed; however, Zidbeck's sentence is vacated and the matter is remanded for a further determination whether she is entitled to resentencing under the Youth Corrections Act.

I.

The only argument of any substance addressed to the convictions on this appeal is appellant Menghi's contention that he was denied due process and effective assistance of counsel by reason of the Government's failure to timely respond to defendant's motion to produce evidence favorable to himself as required by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). It is important to note that all *Brady* material which was requested was provided prior to trial except the Massachusetts Drug Enforcement Agency (DEA) file pertaining to the Government informant Douglas Reu-

ben, who was the intended purchaser of the cocaine and the chief prosecution witness at trial. This file was provided after he had been cross examined but prior to the termination of the Government's case.

It is undisputed that Reuben's credibility was crucial to the Government's case. Appellant Menghi argues that the DEA file contained important impeachment information which, because of its untimely disclosure by the Government, defense counsel was unable to investigate or use effectively to discredit Reuben's reliability. Specifically, Reuben testified that the appellants had attempted to sell him cocaine. On cross examination by Menghi's counsel, he admitted that he had sold marijuana and was a user of cocaine and amphetamines, but denied that he had ever sold cocaine. However, the Massachusetts DEA file, which covered the cocaine trafficking of two dealers unrelated to this case, contained a memorandum which revealed that one suspect had obtained "multi-ounces of high quality cocaine from a source named 'Doug' from Beverly, Mass." The third page of that report identified "Douglas Armand Reuben" as a jewelry salesman in Beverly Farms, Massachusetts, and stated that, according to file checks, he had "formerly sold multi-ounces of cocaine." This information contradicts Reuben's denial of cocaine sales on cross examination.

■ In *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Supreme Court adopted three guidelines for determining whether evidence is to be considered material for the purpose of invoking the *Brady* rule. A strict standard is applied if the prosecution "is or should be aware that it is presenting perjured testimony." *United States v. Provenzano*, 615 F.2d 37, 47 (2d Cir.), cert. denied, 446 U.S. 953, 100 S.Ct. 2921, 64 L.Ed.2d 810 (1980). That test requires a conviction to be set aside "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id.* at 47. The Government's case here did rely upon the testimony of Reuben. Although his credibility was clearly in issue, the Government elicited no perjurious testimony from him. Reuben's denial was brought out and developed only on cross examination. No part of the Government case rested in any way upon Reuben's sale or non-sale of cocaine on prior occasions. Hence *Agur's* strict standard for Government use of perjured testimony does not come into play.

The same strict test of materiality applies if the defendant has made a specific request for the information withheld by the Government, *United States v. Agurs, supra*, 427 U.S. at 104–06, 96 S.Ct. at 2397–2398; *United States v. Provenzano, supra*, 615 F.2d at 47. An examination of the relevant requests in the motion for *Brady* material made by the defendant and supplemented on October 11, 1979 reveals that they were no more specific than those characterized by Judge Mansfield in *Ostrer v. United States*, 577 F.2d 782, 786 (2d Cir. 1978), cert. denied, 439 U.S. 1115, 99 S.Ct. 1018, 59 L.Ed.2d 73 (1979) as "boilerplate."[1] Since

---

1. In all the motion contained eight requests for information. Menghi refers to the last five of them on appeal. These requests were for:

"(4) All information concerning bad acts or crimes committed by the government informant not reflected in his arrest/conviction record.

(5) Whether or not the government informant used drugs or was an addict.

(6) Any evidence indicating non-reliability of the government informant.

(7) Any evidence which might be used to impeach the credibility of the government informant or other government witnesses.

(8) Any material relevant or useful to the preparation of the defense at trial including [requests for information not the subject of dispute here]."

Requests 4, 6, 7, and the relevant portion of 8 are as barren of detail as those discussed in *Ostrer, supra*. The motion there sought "any other material in the possession of the Government bearing adversely on the credibility, character and reputation of [a Government witness]; and ... any other material relating to any matter which defense counsel could properly use in cross examination to inquire into [the witness'] motive and bias in favor of the Government or expectation of favor from the Government." 577 F.2d at 786. Request 5 is arguably more specific, but we need not decide

only a general request was made in this case, the appellants' burden under *Agurs* is to show that the undisclosed evidence, when "evaluated in the context of the entire record," 427 U.S. at 112, 96 S.Ct. at 2401, creates reasonable doubt about his guilt.

■ In determining whether the Massachusetts DEA file would have created a reasonable doubt as to the appellants' guilt we must take into consideration the fact that the file was disclosed to counsel for the defense during the trial. It did not come into the possession of the United States Attorney's Office until May 30, 1980, which, as noted above, was after Reuben had completed his testimony but before the close of the Government's case. Since the file only incidentally referred to Reuben perhaps the delay is understandable. In any event, as soon as the court had made an in camera inspection of the file, it was made available to counsel for defendant Menghi, and was marked on motion of the court as an exhibit. The court ruled that the exhibit could be examined by the jury and explicitly allowed defense counsel to use it in their summations. More importantly, the court repeatedly told defense counsel that they were free to recall Reuben. The offer was never accepted and when the court asked Menghi's counsel why he had decided not to recall Reuben, he responded, "I guess what happened is that we made a decision that it was not worth the effort recalling him or reopening his testimony."

It is also significant that defense counsel made no motion for a continuance when the memorandum in the DEA file was disclosed. On appeal it is now argued that a continuance would not have been effective to allow further investigation and utilization of the information contained in the files. That argument was not advanced to the trial court and rings hollow on appeal, since counsel has failed to establish what further investigation could have achieved. This was not a situation where the disclosed information opens up an entirely new defense theory, see *Grant v. Alldredge*, 498 F.2d 376, 382 (2d Cir. 1974). Reuben's cred-

ibility was always an issue, and on the face of the document defense counsel was certainly in a position to recall Reuben to inquire further into the cocaine sales referred to therein. Counsel chose instead to make no use at all of the document to impeach Reuben on the stand in the presence of the jury. We conclude that earlier disclosure of the DEA file would not have created a reasonable doubt as to appellants' guilt. Counsel made the decision that it was not appropriate to recall Reuben or ask for a continuance. There was no reversible error on the part of the trial court.

■ The arguments of Zidbeck and Hilgert that there was insufficient evidence to support their convictions of conspiracy fail upon a careful review of the evidence. Viewing that evidence as we must in the light most favorable to the Government, *United States v. Costanzo*, 581 F.2d 28, 30 (2d Cir. 1978), cert. denied, 439 U.S. 1067, 99 S.Ct. 833, 59 L.Ed.2d 32 (1979), it is clear that a jury could have found them guilty beyond a reasonable doubt.

## II.

■ Appellant Zidbeck argues that the trial judge abused his discretion by not sentencing her under the Federal Youth Corrections Act (YCA). 18 U.S.C. §§ 5005–5026. The YCA requires that a court explicitly find "no benefit" to an eligible defendant before imposing a sentence other than one under those provisions which authorize commitment to "youth institution[s]." See 18 U.S.C. § 5010(b)–(d); *Dorszynski v. United States*, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974). This requirement was "designed to insure that the sentencing judge exercise his discretion in choosing not to commit a youth offender to treatment under the Act. Such a finding would make unmistakably clear that the sentencing judge was not only aware of the existence of the new Act, but also knew that the youth offender before him was eligible because of his age for the treatment it provided to accomplish its important pur-

the point since Menghi does not allege that such information was withheld, and in any

event Reuben admitted his use of narcotics during trial.

pose ... Once it is made clear that the sentencing judge has considered the option of treatment under the Act and rejected it, however, no appellate review is warranted." *Id.* at 443, 94 S.Ct. at 3052.

The district judge here did make the required "no benefit" ruling. However, the judge further stated that "the court regards the Youth Corrections Act as absolutely no benefit in your case specifically or in any case that this Court will ever have and will never sentence under that Act."

While we have a decent regard for the independence of the judiciary, we cannot possibly countenance the position of the sentencing judge which, applied uniformly, would effectively nullify an Act of Congress. "A trial court which fashions an inflexible practice in sentencing contradicts the judicially approved policy in favor of 'individualizing sentences.' " *United States v. Daniels*, 446 F.2d 967, 971 (6th Cir. 1971) (quoting *Williams v. New York*, 337 U.S. 241, 248, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949)). As we have indicated, "statements by a trial judge reflecting a fixed sentencing policy based on the category of crime rather than on the individualized record of the defendant" cannot be approved. *United States v. Baker*, 487 F.2d 360, 361 (2d Cir. 1973); see *United States v. Ingram*, 530 F.2d 602, 603 (4th Cir. 1976).

We take no view as to whether or not Zidbeck should have been accorded YCA treatment. However, a sentencing judge who takes the position that no defendant is entitled to whatever benefits such treatment may provide no matter what the circumstances is hardly in a position to make the required exercise of discretion in a particular case. We therefore remand the matter to the District Court of Connecticut for sentencing before another District Court Judge.