673 F.2d 43
 Norberto CABALLERY, Petitioner-Appellant,
v.
UNITED STATES PAROLE COMMISSION; United States Probation
Office, Southern District of New York; and Warden,
Metropolitan Correctional Center,
Respondents-Appellees.
 No. 156, Docket 81-2178.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 22, 1981.
Decided March 2, 1982.
 
 1
 Phylis Skloot Bamberger, New York City (The Legal Aid Society, Federal Defender Services Unit, New York City, of counsel), for petitioner-appellant Norberto Caballery.
 
 
 2
 Paul L. Shechtman, Asst. U. S. Atty. for the Southern District of New York City (John S. Martin, Jr., U. S. Atty., New York City, of counsel), for respondent-appellee United States Parole Commission, et al.
 
 
 3
 Before NEWMAN and KEARSE, Circuit Judges, and DALY, District Judge.*
 
 DALY, District Judge:
 
 4
 This is an appeal from a denial of appellant Caballery's petition for a writ of habeas corpus, entered upon an order of the United States District Court for the Southern District of New York (Morris E. Lasker, J.). Caballery's habeas petition was premised on the claim that application of a Parole Commission regulation, promulgated in 1977, to toll his Youth Corrections Act (YCA) sentence, which was imposed in 1975, for the time during which he had absconded from parole was a violation of the ex post facto provision of the Constitution. Judge Lasker held that the 1977 regulation effected no change in the law, and, hence, no ex post facto violation occurred since the YCA, pursuant to which the regulation had been promulgated, could not reasonably be interpreted to preclude such tolling. We agree, and for the reasons set forth below, affirm the denial of the petition.
 
 THE FACTS
 
 5
 On December 30, 1974, Caballery pleaded guilty to a charge of embezzling bank funds in violation of 18 U.S.C. § 656. On March 17, 1975, he was sentenced as a youth offender under the Youth Corrections Act to a term of six years, the maximum permitted by that Act. See 18 U.S.C. § 5017(c). On May 5, 1976, approximately 14 months into his six-year term, Caballery was conditionally released from prison to serve the remainder of his term under parole supervision. He apparently complied adequately with the conditions of his parole for about three and a half years, until October of 1979 when he stopped reporting to his supervising parole officer.
 
 
 6
 The Parole Commission issued a warrant for Caballery's arrest on February 26, 1980, charging him, inter alia, with absconding from parole supervision. One year later, on February 25, 1981, approximately one month before he had been scheduled to be unconditionally discharged under his original sentence, Caballery voluntarily surrendered to parole authorities. Following a hearing, Caballery's parole was revoked on June 10, 1981. The Parole Commission denied Caballery credit for the 14-month period-from December 27, 1979 through February 24, 1981-during which he had failed to report to his parole supervisor, and a new release date was set for May 15, 1982.
 
 DISCUSSION
 
 7
 The ex post facto clause of the Constitution, Art. I, § 9, cl. 3, "forbids the Congress ... to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed, or imposes additional punishment to that then prescribed.' " Weaver v. Graham, 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981), quoting Cummings v. Missouri, 71 U.S. (4 Wall.) 277, 325-26, 18 L.Ed. 356 (1867). The issue in this case, then, is whether the 1977 Parole Commission regulation, promulgated after appellant had been sentenced, constituted a change in the law which was "both retrospective and more onerous than the law in effect on the date of the offense." Weaver v. Graham, supra, 450 U.S. at 30-31, 101 S.Ct. at 965-966 (footnote omitted).
 
 
 8
 The Youth Corrections Act (YCA), 18 U.S.C. § 5005, et seq., in effect in 1974 when appellant committed the offense for which he was sentenced in 1975, provided then, as now, that
 
 
 9
 "(a) youth offender committed under section 5010(b) of this chapter shall be released conditionally under supervision on or before the expiration of four years from the date of his conviction and shall be discharged unconditionally on or before six years from the date of his conviction."
 
 
 10
 18 U.S.C. § 5017(c).
 
 
 11
 In 1977, the Parole Commission promulgated the interpretive regulation at issue here, which provides in relevant part:
 
 
 12
 "Service of the sentence of a committed youth offender ... commences to run from the date of conviction and is interrupted only when such prisoner or parolee (1) is on bail pending appeal; (2) is in escape status; (3) has absconded from parole supervision....
 
 
 13
 28 C.F.R. § 2.10(c) (1980).
 
 
 14
 Caballery contends that the express language of 18 U.S.C. § 5017(c) mandates that he be "discharged unconditionally on or before six years from the date of his conviction,"-in this case, March 17, 1981-regardless of the fact that for 14 months of his six-year sentence he neglected to comply with the supervision requirement of his conditional release. He argues essentially that, because neither the statute nor any administrative regulations in effect on the date of his conviction[1] specifically provided for interruption or tolling of a YCA sentence during the time when a youth offender absconded from parole supervision, the statute must be interpreted to preclude such tolling. He therefore concludes that the 1977 Parole Commission Regulation, 28 C.F.R. § 2.10(c), which does so provide, represented a change in the law, occurring after the commission of his offense, which operated to "extend" his sentence past the original expiration date, thus violating the ex post facto provision.
 
 
 15
 In support of this interpretation of 18 U.S.C. § 5017(c), appellant argues that the YCA was enacted to provide special treatment for youth offenders, and seeks to distinguish the YCA from the parole statutes and regulations applicable to adult offenders, which historically have provided explicitly that a parole violation resulted in the loss of credit for all parole time.[2] Appellant also relies on the administrative practice of the Parole Commission and its predecessor, the Parole Board, which, prior to 1977, apparently was not to toll a youth offender's sentence for the time during which he failed to report to his parole supervisor.
 
 
 16
 Appellant's interpretation of 18 U.S.C. § 5017(c), although not without surface appeal, is erroneous for several reasons.
 
 
 17
 In the first place, although the language of 18 U.S.C. § 5017(c) is framed in mandatory terms and, if taken literally, would appear to require that a youth offender be "unconditionally"[3] discharged six years after the date of his conviction, even if he had never actually served any part of his sentence, such an interpretation must be rejected as it would defeat the very purpose of the YCA. Congress's principal objective in enacting the YCA was to rehabilitate youth offenders who might be highly susceptible to the danger of recidivism. See Dorszynski v. United States, 418 U.S. 424, 433, 94 S.Ct. 3042, 3047, 41 L.Ed.2d 855 (1974), and the legislative history cited therein. Toward this end, the Act called for the implementation of programs of treatment[4] and supervision geared toward rehabilitation. See 18 U.S.C. §§ 5011, 5019. The whole point of the Act was that "rehabilitative treatment should be substituted for retribution as a sentencing goal" where youth offenders are concerned. Durst v. United States, 434 U.S. 542, 545, 98 S.Ct. 849, 851, 55 L.Ed.2d 14 (1978) (footnote omitted).
 
 
 18
 The rehabilitative purposes of the YCA quite obviously can only be achieved if the offender undergoes the treatment and supervision contemplated by the Act. Yet, under appellant's interpretation of 18 U.S.C. § 5017(c), a youth offender would be afforded credit for time spent avoiding the very supervision which was intended to further the beneficial goals of the YCA; this would permit him to flout his supervision with impunity. Such an interpretation is patently unreasonable, and would fly in the face of Congressional intent. There is simply no basis for holding that when Congress specified a six-year period of rehabilitation, including time spent under parole supervision, it intended to credit as part of that period whatever time the youth offender could spend eluding parole authorities.
 
 
 19
 Moreover, as Judge Lasker noted, there is a well-established common law principle that "(m)ere lapse of time without imprisonment or other restraint contemplated by the law does not constitute service of sentence." Anderson v. Corall, 263 U.S. 193, 196, 44 S.Ct. 43, 44, 68 L.Ed. 247 (1923).[5] Parole, of course, constitutes a "restraint contemplated by the law" since the parolee is bound to remain under the control of his parole supervisor. Id. There is not the slightest indication in the statute's language or its legislative history that Congress intended to override this common sense lapse-of-time principle when it enacted the YCA.
 
 
 20
 Indeed, even before the Commission promulgated 28 C.F.R. § 2.10(c), courts applied this principle in construing the YCA to hold that a youth offender's sentence is tolled by escape from custody, Suggs v. Daggett, 522 F.2d 396 (10th Cir. 1975); Hartwell v. Jackson, 403 F.Supp. 1229 (D.D.C.1975), aff'd mem., 546 F.2d 1042 (D.C.Cir.1976); by incarceration for civil contempt, In Re McClanahan, 612 F.2d 642 (2nd Cir. 1979) and by release on bond pending appeal, Frye v. Moran, 302 F.Supp. 1291 (W.D.Tex.), summarily aff'd per curiam, 417 F.2d 315 (5th Cir. 1969). The same general principle was applied following the promulgation of 28 C.F.R. § 2.10(c) in Henrique v. United States Marshal, 476 F.Supp. 618 (N.D.Cal.1979), aff'd, 653 F.2d 1317 (9th Cir. 1981), where the court, faced with virtually the same issue as presented here, interpreted the YCA to permit tolling of a youth offender's sentence for the period during which the petitioner had absconded from parole supervision. The District Court there held that 28 C.F.R. § 2.10(c) did not constitute an ex post facto law because "it has never been the law that Youth Act (sic) sentences ran without interruption. Instead, factors which toll the running of youth offender sentences have been recognized as they have been presented to the courts." 476 F.Supp. at 624.[6]
 
 
 21
 We agree that it has never been the law that the YCA precluded the interruption and tolling of a youth offender's sentence for the time during which he had absconded from parole supervision. Furthermore, tolling a parolee's sentence for the period during which he is in abscondence does not "extend" or increase the original sentence. It merely incorporates the common law rule that lapse of time does not constitute service of sentence and, hence, stops the sentence from running for that period during which the offender, through some fault of his own, has failed to serve his sentence. See McDonald v. Lee, 217 F.2d 619, 623 (5th Cir. 1954), vacated as moot, 349 U.S. 948, 75 S.Ct. 619, 99 L.Ed. 1274 (1955).
 
 
 22
 Our decision in Shepard v. Taylor, 556 F.2d 648 (2d Cir. 1977), is not controlling here. Shepard had been sentenced in 1972 when the YCA precluded consideration by the Parole Board of the severity of a youth offender's crime in determining his eligibility for conditional release. In 1976, however, Congress amended the statute to permit consideration of precisely that factor, thus incorporating into the statute the concepts of general deterrence and retribution which the YCA had originally rejected in favor of rehabilitation as the sole basis of sentencing and parole. We held that the application to Shepard of "new and onerous considerations that were forbidden when he was originally sentenced," which effectively delayed his eligibility for parole, violated the ex post facto clause. Id. at 654. Here, in contrast, tolling of a youth offender's sentence when he absconded from parole supervision was not forbidden by the statute when appellant was sentenced, nor does such tolling impose a more onerous punishment than that permitted by the statute at the time of sentencing.
 
 
 23
 Although 28 C.F.R. § 2.10(c) did not constitute a change in the law, it did, apparently, herald a change in the Parole Commission's practice, which, prior to 1977, was not to toll a youth offender's sentence for the time during which he was in abscondence from supervision. This practice was based, however, on the Commission's erroneous interpretation of the YCA. Although much deference is usually accorded an administrative agency's determination, an agency's misinterpretation of a statute is not binding on a court's construction of that statute. See H. W. Wilson Co. v. United States Postal Service, 580 F.2d 33, 37 (2d Cir. 1978). By the same token, an agency misinterpretation of a statute cannot support an ex post facto claim. As was stated in Mileham v. Simmons, 588 F.2d 1279, 1280 (9th Cir. 1979), "The ex post facto clause of the Constitution does not give (appellant) a vested right in such an erroneous interpretation."
 
 
 24
 For the foregoing reasons, the District Court's denial of the petition for a writ of habeas corpus is affirmed.
 
 
 
 *
 Honorable T. F. Gilroy Daly, Judge, United States District Court for the District of Connecticut, sitting by designation
 
 
 [1]
 In 1974, the Parole Board issued a set of revised rules, one of which, 28 C.F.R. § 2.10(c) (1974), explicitly provided, for the first time, for interruption of a youth offender's sentence, but only in two instances: when the offender is on bail pending appeal or when he is in escape status. No mention was made of interruption during a period of abscondence from parole supervision. This provision remained in effect until 1977, when abscondence was added to those events that would interrupt a youth offender's sentence. Prior to 1974, the parole regulations provided only that "(s)ervice of a committed youth offender's sentence commences to run and continues to run uninterruptedly from the date of conviction." See 28 C.F.R. § 2.8(c) (1963)-(1973)
 
 
 [2]
 This provision, known as the "no-street-time" rule, provided that, if parole was revoked for any reason, the parole violator would be denied credit for all parole time, even that period prior to the date of the parole violation. See, e.g., 18 U.S.C. § 719 (1928); 18 U.S.C. §§ 719, 723c (1940) and (1946); 18 U.S.C. §§ 4205, 4207 (Supp. V 1975); 18 U.S.C. §§ 4205, 4207 (1958), (1964), and (1970). See, also, 28 C.F.R. § 2.38 (1938); 28 C.F.R. § 2.38 (1949); 28 C.F.R. § 2.39 (1963). This rule was changed to permit credit for "street time" in all but some circumstances by a regulation promulgated pursuant to the Parole Commission and Reorganization Act of 1976, 18 U.S.C. § 4201, et seq. See 28 C.F.R. § 2.52(c) (1980)
 
 
 [3]
 As the Ninth Circuit noted in Henrique v. United States Marshal, 653 F.2d 1317, 1319 n. 4 (9th Cir. 1981), the adverb "unconditionally" describes the nature of the discharge, not the fact of discharge
 
 
 [4]
 "Treatment" is defined by the statute as "corrective and preventive guidance and training designed to protect the public by correcting the antisocial tendencies of youth offenders." 18 U.S.C. § 5006(g)
 
 
 [5]
 Appellant's contention that the District Court's reliance on Anderson was misplaced is without merit. Although Anderson did involve the application of the "no-street-time" provision of the statute, that did not affect the validity of the common law lapse-of-time principle stated therein. In fact, Anderson makes clear that the parole statute went far beyond the common law tolling rule by imposing a penalty-i.e. the forfeiture of credit for all parole time, even that time prior to the parole violation during which the parolee had complied with the conditions of his parole. Moreover, such penalty was imposed for any parole violation, not just abscondence from supervision
 
 
 [6]
 Cf., Ogg v. Klein, 572 F.2d 1379 (9th Cir. 1978), holding that the 1976 tolling regulation (see fn. 1), promulgated after appellant was convicted, providing that YCA sentence is tolled by escape is not an ex post facto law since the regulation did not change prior law