Demetrios PAPADAKIS, Petitioner,

v.

WARDEN, METROPOLITAN CORRECTIONAL CENTER, NEW YORK, NEW YORK; United States Parole Commission, Philadelphia, Pennsylvania; Attorney General of the United States, Washington, D.C.; United States Marshal's Service, New York, New York, Respondents.

No. 86 Civ. 1522(MEL).

United States District Court,
S.D. New York.

March 21, 1986.

Martin L. Schmukler, New York City, for petitioner.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for respondents; Randy M. Mastro, Asst. U.S. Atty., of counsel.

LASKER, District Judge.

Demetrios Papadakis petitions for a writ of habeas corpus directing that he be released from custody imposed pursuant to a parole violation detainer lodged against him by the United States Parole Commission. The determining issue presented by the petition is whether, at the time the detainer was filed, Papadakis was any longer on parole or subject to the jurisdiction of the Parole Commission with regard to the charges specified in the detainer.

I.

Between 1971 and 1974 Papadakis was sentenced in three separate proceedings for the commission of drug-related offenses. In *United States v. Fiorino*, 71 Cr. 972 (S.D.N.Y.) (MG), Papadakis pleaded guilty and was sentenced to a five-year prison term to be followed by a three-year special parole term pursuant to 21 U.S.C. § 841. In *United States v. Pacelli*, 71 Cr. 614 (S.D.N.Y.) (MP), Papadakis was convicted and sentenced to a five-year prison term to be served consecutively with the sentence imposed in *Fiorino* and to a three-year special parole term to commence thereafter. In *United States v. Novoa*, 74 Cr. 229 (S.D.N.Y.) (IBW), Papadakis was convicted and sentenced to a five-year prison term to run concurrently with his earlier sentences. Thus, Papadakis was to serve ten years in prison followed by six years of special parole, commencing from November 9, 1971, when he began serving his prison term. His first, three-year special parole term would therefore begin to run in November 1981.

On February 15, 1983, Papadakis and others were indicted on bank larceny charges in connection with the December 1982 theft of $11 million from the Sentry Armored Car Courier Corporation. *United States v. Potamitis*, 83 Cr. 68 (S.D.N.Y.) (EW). On March 17, 1983, the Parole Commission issued a parole violation warrant for Papadakis on the basis of the conduct underlying his indictment for bank larceny in *Potamitis*. Although Papadakis was in custody on the criminal charges at the time the warrant was issued, when he posted a bond to secure his release on March 22, 1983, the warrant was executed and he was immediately detained.

On April 13, 1983 this court, on Papadakis' petition for habeas corpus, ordered Papadakis released from incarceration under the terms and conditions fixed in connection with his bail release in the criminal case and stayed the parole revocation proceedings until the conclusion of Papadakis' criminal trial. *Papadakis v. Warden, Metropolitan Correctional Center*, 83 Civ. 2734 (S.D.N.Y. Apr. 13, 1983). On December 7, 1983 a jury acquitted Papadakis on the bank larceny charges but convicted other defendants in the case. The government did not reinstitute parole revocation proceedings based on the March 1983 detainer at that time.

In September 1984, Nicholas Gregory, who had been a fugitive at the time of the *Potamitis* trial, was arrested and subsequently indicted on a number of charges in connection with the Sentry robbery. SSS 83 Cr. 68 (S.D.N.Y.) (EW) (Dec. 6, 1984). On March 7, 1985, Gregory was convicted by a jury after a month-long trial at which the government contends new evidence was presented implicating Papadakis as a central conspirator in the Sentry robbery.

Prior to the *Gregory* trial, Papadakis was ordered to appear before a grand jury. On December 7, 1984 he invoked his fifth amendment privilege and was granted immunity from prosecution. On December 11 Papadakis again appeared before the grand jury and refused to testify. As a result Judge Knapp held Papadakis in civil contempt and ordered him incarcerated. On June 18, 1985 Papadakis was released from civil contempt incarceration but the next day was indicted on criminal contempt charges stemming from his refusal to testify. *See United States v. Papadakis*, 85 Cr. 559 (S.D.N.Y.) (EW). In the interim,

however, it appears Papadakis had fled to avoid arrest on the criminal contempt charges.

On January 12, 1986 Papadakis was arrested on the criminal contempt charges and detained pending trial on a secured bond of $750,000. On or about the time of Papadakis' arrest, the government lodged a parole violation detainer against him that included the original March 1983 bank larceny charge as well as two supplemental charges issued on January 3, 1985 by the Parole Commission. The two supplemental charges accused Papadakis of "association with a person having a criminal record" and "leaving the district without permission" during the period between 1982 and 1984. On March 6, 1986 Papadakis posted bond and the government immediately executed the parole violation warrant, resulting in Papadakis' continued confinement. On March 10 Papadakis was tried before Judge Weinfeld without a jury on the criminal contempt charges, was found guilty of those charges, and was remanded to custody without bail.

## II.

In support of his petition for a writ of habeas corpus, Papadakis makes three arguments. First, Papadakis contends that his acquittal in a criminal trial on charges of bank larceny bars parole revocation proceedings for the same offense under principles of double jeopardy, res judicata, and collateral estoppel. Second, Papadakis asserts that the parole violation detainer in this case is of no force and effect because it was lodged and executed after the expiration of Papadakis' lawful prison terms and special parole period. Papadakis reasons that his first three-year special parole term expired in November 1984 and that his second three-year special parole term was unlawfully imposed for what he claims was a conspiracy offense not punishable by special parole. Third, Papadakis claims that the Parole Commission should be precluded as a matter of constitutional due process from proceeding against him because the Commission took no action on the

original detainer for more than two years after Papadakis' December 1983 acquittal on the bank larceny charges and failed to notify him for more than a year of the supplemental charges issued in January 1985.

The government responds, first, that Papadakis' acquittal does not bar parole revocation based on the same charges both as a matter of law and because new evidence not presented at Papadakis' trial supports the initial charge as well as the two supplemental charges of criminal association and unauthorized travel. Second, the government contends that even if Papadakis is correct that the second three-year special parole term was erroneously imposed, he can only challenge that sentence before the sentencing judge, and that in any event, Papadakis has yet to serve the full three years on the first special parole term since that period was tolled by this court's April 1983 order staying parole revocation proceedings, by Papadakis' civil contempt commitment, and by his absconding at the time of his criminal contempt indictment. Third, the government asserts that the Parole Commission is not barred as a matter of due process from revoking Papadakis' parole at this time because any delay in proceeding against him was the result primarily of Papadakis' own actions and the government's efforts to collect additional evidence before reinstituting parole revocation proceedings following Papadakis' acquittal.

## A.

■ It should be noted initially that although Papadakis is currently incarcerated as a result of his being found guilty of criminal contempt charges, rather than as a result of the parole violation warrant that is the subject of this case, his petition for habeas corpus is not moot. This is so because absent some resolution of the questions presented on Papadakis' petition, the Parole Commission will be able simply to reinstitute parole revocation proceedings at any future time when Papadakis is released from incarceration. In this sense,

the actions of the Parole Commission would be "capable of repetition, yet [might] evad[e] review." *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911).

## B.

■ With regard to Papadakis' first claim, that parole revocation proceedings based on conduct underlying his 1983 indictment for bank larceny are barred by his subsequent acquittal on those charges, the law in the Second Circuit supports the government's position. In *United States ex rel. Carrasquillo v. Thomas*, 527 F.Supp. 1105 (S.D.N.Y.1981), *aff'd on opinion below*, 677 F.2d 225 (2d Cir.1982), Judge Weinfeld, presented with a claim similar to that made by Papadakis here, stated that "had the indictment not been dismissed but had petitioner been tried and found not guilty, it would not have barred a parole revocation based on the same charges of which he had been acquitted." *Id.* at 1109. Although *Carrasquillo* involved the dismissal of an indictment with prejudice rather than an acquittal, Judge Weinfeld discussed the differences in concept, purpose, and burden of proof between a criminal prosecution and a parole revocation proceeding in concluding that parole revocation was not barred under either *res judicata* or collateral estoppel concepts or the double jeopardy provision of the fifth amendment to the United States Constitution. *Id.* at 1108–10. In affirming the opinion of the district court, the Court of Appeals stated *per curiam* that its decision was presaged by *Billiteri v. United States Board of Parole*, 541 F.2d 938, 944 (2d Cir.1976), which found the function of the Parole Commission to be analogous to that of a sentencing judge, who is permitted to consider charges of which a defendant has been acquitted. *United States ex rel. Carrasquillo v. Thomas*, 677 F.2d 225 (2d Cir. 1982). Consequently, we conclude that, as a matter of law, parole revocation proceedings based on the charges on which Papadakis was acquitted are not barred, without considering the government's contention that new evidence and supplemental charges distinguish the present proceedings from those instituted in 1983.

## C.

Papadakis' second argument, that the parole violation detainer is of no force and effect because it was issued or reinstituted after the expiration of his lawful prison terms and special parole period, raises two issues. First, was Papadakis' second three-year special parole term unlawfully imposed? In *Bifulco v. United States*, 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980), the Supreme Court held that a special parole term could not be imposed for a narcotics conspiracy conviction. In this case the government appears to concede that Papadakis' second three-year special parole term could not lawfully have been imposed, because his 1972 conviction appears to have been for conspiracy alone. The government contends, however, that Papadakis cannot challenge his 1972 sentence in this habeas corpus proceeding since 28 U.S.C. § 2255 provides that "an application for a writ of habeas corpus ... shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him." Even if the government's position that Papadakis' 1972 sentence cannot be vacated in this proceeding but rather can only be set aside by motion to the sentencing judge is correct, we nevertheless find for the purpose of this application that Papadakis' second three-year special parole term is unlawful. Thus, absent any tolling effects, Papadakis' first, and only, three-year special parole term would have expired in November 1984.

The government contends further, however, that Papadakis has not yet served the full three years on his first special parole term because of various events which it claims have tolled the running of his parole. Accordingly, the question posed is whether Papadakis was still on parole when the most recent detainer was lodged in January of this year as the result of the extension of his first special parole term by (1) the April 1983 order staying parole rev-

ocation proceedings until the conclusion of the bank larceny trial in December 1983; (2) Papadakis' incarceration for civil contempt from December 1984 to June 1985; and (3) Papadakis' fugitive status with respect to his criminal contempt indictment from June 1985 to January 1986.

The arithmetic of the government's proposition is such that in order to prevail the government must establish that it is correct as to the tolling effect of both the April 1983 order and Papadakis' civil contempt commitment.* We agree with the government that Papadakis is not entitled to credit for parole time for the period he was imprisoned for civil contempt. *See* 28 C.F.R. § 2.10(b) (1985) ("imprisonment for civil contempt shall interrupt the running of any sentence of imprisonment being served at the time the sentence of civil contempt is imposed, and the sentence ... so interrupted shall not commence to run again until the sentence of civil contempt is lifted"). We also agree with the government that parole time should not be credited for the period during which Papadakis was a fugitive on his indictment for criminal contempt. *Cf. Caballery v. United States Parole Commission*, 673 F.2d 43, 46 (2d Cir.) (absconding from parole supervision, escaping from custody), *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d

1354 (1982); 28 C.F.R. § 2.52(c)(1) (1985) (parolee intentionally failing to respond to summons of Parole Commission).

We do not agree that the time during which Papadakis was released on bond pending his trial on the bank larceny charges—the period from the issuance of the April 1983 order staying parole revocation proceedings until his December 1983 acquittal—cannot, as a matter of law, be credited to Papadakis' parole time. The cases cited by the government in support of its position stand for the proposition that criminal sentences are tolled during a criminal defendant's release on bail pending appeal of a criminal conviction. *See, e.g., United States v. Robles*, 563 F.2d 1308, 1309 (9th Cir.1977), *cert. denied*, 435 U.S. 925, 98 S.Ct. 1491, 55 L.Ed.2d 519 (1978). In relying on this authority, the government overlooks a crucial distinguishing factor of the present case: Papadakis was not convicted of the offense in connection with which he was free on bail pending trial. Indeed, to hold that Papadakis' release on bond prior to his acquittal automatically tolled his special parole term would be contrary to parole regulations which provide that a parolee "will receive credit on service of his sentence for time spent under supervision, except ... [i]f the parolee has been *convicted* of a new of-

---

* The following table sets out the relevant time periods:

| Event | Date | Time Elapsed | Total Time Elapsed |
|---|---|---|---|
| first special parole term begins | Nov. 9, 1981 | --- | --- |
| order issued staying parole revocation proceedings | April 13, 1983 | 1 yr., 5 mos. | 1 yr., 5 mos. |
| Papadakis acquitted on bank larceny charges | Dec. 7, 1983 | 8 mos. | 2 yrs., 1 mo. |
| [special parole term expires but for tolling | Nov. 9, 1984 | --- | 3 yrs.] |
| Papadakis incarcerated for civil contempt | Dec. 11, 1984 | 12 mos. | 3 yrs., 1 mo. |
| Papadakis released from civil contempt incarceration; becomes fugitive on criminal contempt charges | June 18–19, 1985 | 7 mos. | 3 yrs., 8 mos. |
| Papadakis arrested; detainer lodged | Jan. 12, 1986 | 6 mos. | 4 yrs., 2 mos. |

fense committed subsequent to his release of [sic] parole." 28 C.F.R. § 2.52(c)(2) (1985) (emphasis added). Moreover, Papadakis is assumed to have been subject to normal parole supervision and restrictions during the entire time he was free on bail pending trial on the bank larceny charges, and we do not understand the government to argue otherwise.

There remains, however, the government's argument that this court's April 1983 order staying parole revocation proceedings until the conclusion of Papadakis' trial itself acted to toll Papadakis' first special parole term. By its terms, the April 1983 order did not toll Papadakis' parole term. And, as Papadakis' counsel correctly pointed out at oral argument on the petition, the April 1983 order did not prohibit the Parole Commission from continuing to supervise Papadakis or excuse him from parole conditions. Consequently, we construe the government's argument to mean that since Papadakis requested the order, he is estopped from arguing, as he does, that the order had no tolling effect.

█ The question, then, since the order does not specify, is what was the tolling effect of the April 1983 order? We conclude that the effect of the order was at least to permit the Parole Commission to proceed on the parole violation charges lodged as of the date of the order within a reasonable period of time after the conclusion of Papadakis' trial, and, if necessary, under certain circumstances to extend Papadakis' parole term (if indeed the court was authorized to do so) in order to permit the resumption of those parole revocation proceedings. For example, had Papadakis' trial not concluded until after the expiration of his special parole term, we think the government would still have had the right—at least for a reasonable time thereafter—either by implication in the April 1983 order or on an estoppel theory to continue the parole revocation proceedings stayed by the order.

█ This case does not present the problem of the trial concluding after or close in time to the expiration of Papadakis' parole

term. Here, eleven months separated the conclusion of the trial in December 1983 from the expiration of Papadakis' first special parole term in November 1984. During this time the Parole Commission chose not to reinstitute parole revocation proceedings, and it appears that the Commission took no action with respect to the original parole violation charges against Papadakis until it received "substantial new evidence of Papadakis' involvement in bank larceny as a result of the *Gregory* trial in the first half of 1985." (March 4, 1986 Letter from Randy M. Mastro, Assistant United States Attorney, at 3) Although the Parole Commission received evidence in 1984 of other parole violations by Papadakis during his first special parole term, this evidence related solely to the two supplemental charges issued by the Commission in January 1985, not the original parole violation charges.

Consequently, we find that the Parole Commission did not act within a reasonable time following the conclusion of Papadakis' bank larceny trial to continue the parole revocation proceedings stayed by the April 1983 order. In essence, this is a finding that, with regard to the question of estoppel, the Parole Commission was not prejudiced by the issuance of the April 1983 order because for almost a year following Papadakis' acquittal on bank larceny charges it had the opportunity to resume proceedings on the original parole violation charges. That the Commission may have been put at a disadvantage by not having sufficient new evidence to enable it to proceed during this period is not a state of affairs chargeable to Papadakis. In view of this absence of prejudice to the Parole Commission, Papadakis is not estopped from claiming that the April 1983 order had no tolling effect and that the current parole violation detainer was lodged and executed after the expiration of his first special parole term.

The eight-month period between the April 1983 order staying parole revocation proceedings and the conclusion of Papadakis' 1983 trial is therefore properly credited

to his first three-year special parole term, and that term thus expired in November 1984. The parole violation detainer lodged against Papadakis in January 1986 is consequently of no force and effect, since only the first special parole term was lawfully imposed.

### D.

In view of the findings and conclusions above, it is unnecessary to consider Papadakis' contention that the Parole Commission should be precluded as a matter of constitutional due process from proceeding against him at this time. It is worth noting, however, that a finding of what constitutes a reasonable time for the purposes of analyzing the estoppel issue is wholly distinct from the determination of what amounts to unconstitutional delay.

Accordingly, the petition for a writ of habeas corpus is granted, subject to whatever conditions on Papadakis' freedom have been imposed in connection with his recent trial and conviction on criminal contempt charges.

It is so ordered.