822 F.2d 240
 Demetrios PAPADAKIS, Petitioner-Appellee,
v.
WARDEN OF the METROPOLITAN CORRECTIONAL CENTER, United
States Parole Commission, Attorney General of the
United States, and United States
Marshal, New York, New York,
Respondents-Appellants.
 No. 580, Docket 86-2321.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 26, 1987.
Decided June 15, 1987.
 
 Randy M. Mastro, Asst. U.S. Atty., S.D.N.Y., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Nancy Kilson, Asst. U.S. Atty., S.D.N.Y., New York City, of counsel), for respondents-appellants.
 Jonathan N. Boxer, Westbury, N.Y., for petitioner-appellee.
 Before OAKES, MESKILL and MAHONEY, Circuit Judges.
 MESKILL, Circuit Judge:
 
 
 1
 The United States Parole Commission (Commission) appeals from a judgment of the United States District Court for the Southern District of New York, Lasker, J., granting Papadakis' petition for a writ of habeas corpus, Papadakis v. Warden, 631 F.Supp. 252 (S.D.N.Y.1986). Because we agree with Judge Lasker's determination that the Commission lacked jurisdiction over Papadakis at the time it sought to reinstitute parole revocation proceedings against him, we affirm.
 
 
 2
 Demetrios Papadakis is no stranger to the federal courts in the Southern District of New York. In 1971, he pled guilty to drug trafficking and conspiracy charges before Judge Gurfein and was sentenced to concurrent five year prison terms, with a three year special parole term to follow pursuant to 21 U.S.C. Sec. 841 (1982).[1] The following year, Papadakis was convicted of conspiracy to violate the federal drug laws. For that offense, Judge Pollack imposed a five year prison term, consecutive with Papadakis' earlier sentence, plus a second three year special parole term. In 1974, a third conviction on drug charges was entered by Judge Wyatt, resulting in a further five year prison term to be served concurrently with the earlier sentences.
 
 
 3
 Papadakis entered prison in November 1971. On November 9, 1981, the first of his two three year special parole terms began to run. A month later, approximately $11 million was stolen from the Sentry Armored Car Courier Corporation. As a result, Papadakis and several associates were indicted for bank larceny in February 1983. See United States v. Potamitis, 739 F.2d 784 (2d Cir.), cert. denied sub nom. Argitakos v. United States, 469 U.S. 918, 105 S.Ct. 297, 83 L.Ed.2d 232 (1984).
 
 
 4
 Papadakis was arrested on the bank larceny charges and held pending the posting of bond. In the meantime, the Commission issued a parole violation warrant based on the conduct underlying the bank larceny indictment and lodged it as a detainer. Papadakis posted a bail bond, but the Commission executed its warrant to prevent his release. Papadakis petitioned the district court for a writ of habeas corpus, seeking to stay parole revocation proceedings during the pendency of his bank larceny trial. Judge Lasker's order granting the petition reads in pertinent part:
 
 
 5
 ... in light of the special circumstances of this case, it is
 
 
 6
 ORDERED, that pending further proceedings herein, Petitioner shall be released from detention upon the Warrant of the United States Parole Commission issued and dated March 17, 1983 and said release shall take effect only at such time and upon such other terms and conditions as shall hereafter be fixed in connection with a criminal prosecution captioned United States v. Demetrios Papadakos [sic], 83 CR 68 (E.W.), now pending in this court, and
 
 
 7
 IT IS FURTHER ORDERED that parole revocation proceedings now pending against the Petitioner shall be stayed until the conclusion of the trial of the aforesaid criminal prosecution or until the further order of this court or another United States District Judge.
 
 
 8
 Papadakis v. Warden, 83 Civ. 2734 (S.D.N.Y. Apr. 13, 1983).
 
 
 9
 Eight months later, in December 1983, Papadakis was acquitted of the bank larceny charges. The Commission did not reinstitute parole revocation proceedings at that time.
 
 
 10
 In December 1984, Papadakis was incarcerated on a civil contempt citation for refusing to testify before a grand jury, which was continuing to probe the Sentry robbery. In June 1985, upon his release from confinement on the civil contempt order, he was indicted for criminal contempt and fled to avoid arrest. Papadakis remained at large until January 1986, when he was arrested on the criminal contempt charge. On March 6, 1986, as Papadakis was about to be freed on bond, the Commission executed a new parole violation warrant and Papadakis continued in confinement. The new warrant was based on the same bank larceny conduct as the 1983 warrant, plus two supplemental charges that had been issued in early 1985. On March 10, 1986, Papadakis was tried and convicted of criminal contempt and he is currently serving a sentence of five years on that conviction.
 
 
 11
 Papadakis again petitioned the district court for a writ of habeas corpus to prevent the Commission from revoking his parole. Judge Lasker ruled that he had jurisdiction to hear the petition because, even though Papadakis would remain imprisoned on the criminal contempt conviction, the Commission would be able to revoke Papadakis' parole as soon as he was released.[2] 631 F.Supp. at 255.
 
 
 12
 Turning to the substance of Papadakis' petition, Judge Lasker held that the first three year special parole term had expired before the Commission renewed the revocation action. He further decided that the second term never took effect because it had been imposed pursuant to a conspiracy conviction and was, therefore, illegal under Bifulco v. United States, 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980). The court concluded that the Commission lacked jurisdiction over Papadakis because he was not on parole when revocation proceedings were renewed in March 1986. Accordingly, Papadakis' petition for a writ of habeas corpus was granted.
 
 DISCUSSION
 
 13
 This appeal presents two issues. First, we must determine whether Judge Lasker's April 1983 order, which prevented the Commission from proceeding with its proposed revocation action, also prevented parole credit from accumulating in Papadakis' favor. Only if parole credit is due for the eight months between issuance of the order and Papadakis' acquittal of bank larceny charges could Papadakis succeed in claiming that his first special parole term had expired in March 1986.[3]
 
 
 14
 Second, if we conclude that the Commission lacked jurisdiction under the first special parole term, then we must decide whether the second three year term provided the necessary jurisdiction. The answer depends on whether the second term imposed by Judge Pollack was legally vacated by Judge Lasker.
 
 The First Special Parole Term
 
 15
 We reject the Commission's contentions that (1) Papadakis' failure to report for parole supervision constitutes a refusal to obey a Commission order within the meaning of 28 C.F.R. Sec. 2.52(c), and (2) Judge Lasker's order completely barred the Commission from exercising jurisdiction over Papadakis. Judge Lasker's order did not prevent parole credit from accumulating in Papadakis' favor.
 
 
 16
 The Commission's first claim is that the mainspring that keeps the time clock running during a special parole term is parole supervision. It points to a parole regulation that provides that a parolee "will receive credit on service of his sentence for time spent under supervision." 28 C.F.R. Sec. 2.52(c) (1985).
 
 
 17
 It is undisputed that Papadakis violated the terms of his parole by failing to report to his probation officer during the eight months under consideration. It is the settled law of this Circuit, however, that simple failure to report does not automatically suspend parole credit. Toomey v. Young, 589 F.2d 123 (2d Cir.1979) (per curiam), aff'g on basis of district court opinion 449 F.Supp. 336 (1978). The operation of section 2.52(c) was aptly explained by then District Judge Newman:
 
 
 18
 [T]his scheme creates three possible results on the issue of credit. If the parolee's misconduct results in a conviction, the parolee will receive no credit for the time spent on parole. If the parolee refused to obey a Commission order, no credit will be given for the time of such refusal. If the conduct was anything else, the parolee will receive full credit for the time spent on parole.
 
 
 19
 449 F.Supp. at 339-40. Absent a regulation that effects an automatic extension of a parole term, a parolee remains on parole, despite violation of general parole terms, until parole is revoked according to established review procedures.
 
 
 20
 The Commission's reliance on Caballery v. United States Parole Commission, 673 F.2d 43 (2d Cir.1982), aff'g 513 F.Supp. 1071 (S.D.N.Y.1981) (Lasker, J.), cert. denied, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982), is misplaced. In Caballery, a parolee who had been sentenced under the Youth Corrections Act, 18 U.S.C. Sec. 5017(c), failed to report for parole supervision. He remained at large for more than a year after a warrant was issued for his arrest. In holding that no credit was due for unsupervised time, the district court relied on 28 C.F.R. Sec. 2.10, which prescribes interruption of parole when the parolee has absconded from supervision. 513 F.Supp. at 1072-74. We affirmed, finding section 2.10(c) to be a valid codification of the common law principle that mere lapse of time does not constitute service of sentence. 673 F.2d at 46-47.
 
 
 21
 Caballery is not inconsistent with Judge Lasker's holding in this case. Papadakis did not abscond during the eight month pendency of his trial, but apparently complied with the terms of his bail order, which required him to report daily to the trial court. See J.App. at 87. Papadakis was available at all times to receive an order from the Commission to report to his probation officer. The Commission issued no such order because it apparently misread or misunderstood the scope of Judge Lasker's order.
 
 
 22
 A more perplexing question is whether the Commission's authority to revoke Papadakis' parole for new violations was illusory in light of Judge Lasker's order. The Commission contends that Judge Lasker sent a clear "hands off" message and that both the Commission and Papadakis understood this to be the import of the order. We disagree.
 
 
 23
 Judge Lasker's order bars execution of the warrant dated March 17, 1983, and stays "parole revocation proceedings now pending." Thus, the order unambiguously prevents the Commission from continuing existing parole revocation proceedings and from reinstituting proceedings based on the same underlying allegations. The order is not a broad "hands off" mandate preventing the Commission from exercising any jurisdiction over Papadakis.
 
 
 24
 The boundaries of the April 13, 1983, order can be discerned from the special circumstances of its issuance. Judge Lasker purposefully linked the relief to those circumstances. Three years later, during oral argument in the habeas corpus action, Judge Lasker recalled that he had "simply stayed the parole revocation proceedings under [the] theory that if the man was released [on bail] as he was, on the underlying criminal charges then pending, it didn't make sense to hold him on acount [sic] of parole." J.App. at 47 (Transcript of Oral Argument on March 3, 1986). The Commission's 1983 warrant cited no violation other than the arrest and indictment for bank larceny. J.App. at 796 (warrant application dated April 14, 1983). It is clear that Judge Lasker designed his 1983 order only to prevent the Commission from interfering with Judge Weinfeld's bail order without showing cause beyond that already cited to Judge Weinfeld.
 
 
 25
 The order stated that Papadakis' release would take effect "upon such other terms" as Judge Weinfeld might fix (emphasis added). This would indicate that the parole term would continue to run and that in addition any bail terms imposed by Judge Weinfeld would also apply. The order did not "release[ ] Papadakis upon terms and conditions which did not include continued supervision by parole authorities," as the Commission claims.
 
 
 26
 Judge Lasker was presented with a narrow issue. It would be anomalous to interpret his order as broadly prohibiting the Commission from enforcing parole requirements not directly related to the then pending trial. We conclude that the order applied only to prevent parole revocation for conduct specified in the bank larceny indictment and that the Commission remained free to institute parole revocation proceedings based on any other conduct by which Papadakis might have violated his parole.
 
 
 27
 The Commission is concerned that it might be permanently foreclosed from pursuing a revocation proceeding if parole credit is allowed to accumulate while the Commission is prevented from acting, as it was in this case. Had the trial been delayed long enough, argues the Commission, Papadakis' parole term would have expired before the order's stay expired.
 
 
 28
 The stay of proceedings here was effective "until the conclusion of the [bank larceny trial] or until the further order of this court or another United States District Judge." April 13, 1983, Order of Judge Lasker. The quoted language makes explicit Judge Lasker's apprehension that circumstances warranting a modification of the order might develop prior to trial. Because the inability to predict the future with any degree of certainty is a handicap shared by all judges, we decline to interpret Judge Lasker's order as foreclosing all Commission action no matter what unforeseen events might occur. More to the point, we refuse to rule on the basis of a long trial delay that was hypothesized but never realized. Rather, we assume that in the closing days of the special parole term the Commission would have applied to Judge Lasker for just the sort of modification that he invited in his April 1983 order. When circumstances change during the pendency of a court order, the burden of pursuing appropriate relief naturally lies with the party who feels threatened. Here, because of Commission inaction, the first special parole term was not extended while the order was in effect, and it expired before the Commission issued its warrant.
 
 The Second Special Parole Term
 
 29
 The second three year special parole term was imposed in 1972 by Judge Pollack following Papadakis' conviction of conspiracy in violation of the Comprehensive Drug Abuse Prevention Act of 1970. Subsequently, the Supreme Court ruled that drug conspiracy convictions are not punishable by special parole terms. Bifulco v. United States, 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980). The district court relied on Bifulco and treated the second special parole term as a nullity for the purposes of this action. This ruling effectively vacated the clearly illegal sentence and we treat the resultant ruling as a vacatur under 28 U.S.C. Sec. 2255.
 
 
 30
 The Commission concedes that a motion under section 2255 to vacate the clearly illegal special parole term provision of the sentence would succeed if presented to Judge Pollack. Nevertheless, it argues that Judge Lasker's vacation of the second special parole term was ineffective because section 2255 requires Papadakis to apply for relief to the sentencing judge. We disagree.
 
 
 31
 Where factual circumstances so dictate, a court is authorized to consider a petition for a writ of habeas corpus as a motion to vacate under section 2255. Helms v. Blackwell, 367 F.2d 149, 150 (5th Cir.1966) (per curiam). By its own terms, section 2255 only limits a petitioner to the court that sentenced him. Both Judge Pollack and Judge Lasker sit in the Southern District of New York. Each has access to the court records which report the sole factual dispute here--whether the 1972 conviction was only for conspiracy.
 
 
 32
 As a matter of comity and practicality, an application under section 2255 is usually made to the sentencing judge. See Zaffarano v. Fitzpatrick, 404 F.2d 474, 478 (2d Cir.1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2130, 23 L.Ed.2d 766 (1969). We know of no rule requiring strict adherence to such a procedure where it might unnecessarily complicate and delay adjudication of a petitioner's substantial mainstream claims. We especially note that section 2255's "sole purpose was to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum." United States v. Hayman, 342 U.S. 205, 219, 72 S.Ct. 263, 272, 96 L.Ed. 232 (1952).
 
 
 33
 No practical considerations required the attention of Judge Pollack, and the Commission has not alleged that its case was prejudiced by Judge Lasker's action. We hold that Judge Lasker acted prudently and within his discretion in vacating the illegal special parole term as a necessary part of the larger habeas corpus proceeding before him.
 
 CONCLUSION
 
 34
 Judge Lasker's April 13, 1983, order prevented immediate parole revocation based on the outstanding indictment, but did not otherwise interfere with parole supervision of Papadakis and did not toll the running of the special parole term. The Commission remained free at all pertinent times to assert jurisdiction over Papadakis, including revocation of parole for reasons not related to the indictment. Similarly, the Commission remained free to return to Judge Lasker in case of trial delay to request modification of the order to prevent foreclosure of legitimate government options. The responsibility for timely supervision of the parolee rests with the Commission. In this case it simply waited too long. Finally, Judge Lasker acted within his discretion in refusing to recognize Commission jurisdiction grounded in a sentence illegally imposed by another judge in the same district.
 
 
 35
 The judgment of the district court is affirmed.
 
 
 
 [1]
 The operation of a special parole term is described by Sec. 401(c) of the Comprehensive Drug Abuse Prevention and Control Act of 1970:
 A special parole term imposed under this section or section 845 ... of this title may be revoked if its terms and conditions are violated. In such circumstances the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole. A person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment. A special parole term provided for in this section or section 845 ... of this title shall be in addition to, and not in lieu of, any other parole provided for by law.
 21 U.S.C. Sec. 841(c) (prior to 1984 amendment, which added Sec. 845a to sections affected).
 
 
 [2]
 Strictly speaking, the issue before Judge Lasker was not mootness but rather prematurity under the future custody principles established in Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968). Nevertheless, Judge Lasker correctly perceived the dispositive question to be whether Papadakis would remain in custody after completing his criminal contempt sentence. See id. at 67, 88 S.Ct. at 1556; Walker v. Wainwright, 390 U.S. 335, 336, 88 S.Ct. 962, 963, 19 L.Ed.2d 1215 (1968) (demand for immediate release from detention not a requirement for habeas corpus petition); Jones v. Cunningham, 371 U.S. 236, 242-43, 83 S.Ct. 373, 376-77, 9 L.Ed.2d 285 (1963) (release into custody of parole board is significant restraint on freedom within meaning of habeas corpus statute). Papadakis' petition was neither moot nor premature
 
 
 [3]
 Papadakis was incarcerated during part of his first special parole term and was in unlawful flight to avoid prosecution on the criminal contempt indictment during another part. As a matter of arithmetic, the first special parole term would have expired despite these lacunae unless the term was extended by the critical eight month tenure of Judge Lasker's order. For a complete timetable, see 631 F.Supp. at 256 n. *