**Walter L. LESZYNSKI, Plaintiff,**

v.

**U.S. PAROLE COMMISSION, et al., Defendants.**

No. 88–0224–CV–W–8–P.

United States District Court,
W.D. Missouri, W.D.

Oct. 3, 1989.

Walter L. Leszynski, Leavenworth, Kan., pro se.

Judith Strong, U.S. Atty., Kansas City, Mo., for defendants.

## ORDER

STEVENS, District Judge.

Walter L. Leszynski filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking his immediate release from custody. In support of this petition, Leszynski argues that the United States Parole Commission (Commission) failed to grant him credit for time he argues was spent on parole prior to the time the Commission revoked his parole. The parties agree on the facts contained in the petition but disagree on the applicable law.

### Facts

On October 25, 1966 the United States District Court for the Northern District of Illinois sentenced petitioner to 18 years of imprisonment for bank robbery. The Bureau of Prisons calculated that his full term of imprisonment would expire on July 26, 1984 and that he would be eligible for parole on July 26, 1972. On July 16, 1975 the United States Board of Parole (Board) issued petitioner's Certificate of Parole. Petitioner signed this document, agreeing to abide by a number of conditions of parole listed on the Certificate. Among these conditions were the following:

1. You shall go directly to the district shown on this CERTIFICATE OF PAROLE (unless released to the custody of other authorities). Within three days after your arrival, you shall report to your parole advisor if you have one, and to the United States Probation Officer whose name appears on this Certificate. If in any emergency you are unable to get in touch with your parole advisor, or your probation officer or his office, you shall communicate with the United States

Board of Parole, Department of Justice, Washington, D.C. 20537.

2. If you are released to the custody of other authorities, and after your release from physical custody of such authorities, you are unable to report to the United States Probation Officer to whom you are assigned within three days, you shall report instead to the nearest United States Probation officer.

On July 16, 1975 the Board paroled petitioner "to the actual physical custody of detaining authorities only." Although the record does not reflect the fact specifically, the parties agree that petitioner was paroled to the state of Illinois for service of a concurrent sentence. On October 28, 1976 Illinois released petitioner. For reasons not shown on the record, the state of Illinois never informed federal authorities of this action.

Petitioner never reported to his federal probation officer after his release as required by the conditions on the Certificate of Parole. In his petition in the instant case, he contends that he tried to report to his parole officer but was unsuccessful.[1] He also states that he wrote a letter, signed by himself and his state parole officer, to the Parole Commission but that he received no response. Petitioner argues that since the Parole Commission did not respond to his inquiries or attempt to contact him, he reasonably believed that he had no further obligation to the United States Government.

Almost eight years later, in late February 1984, the Federal Bureau of Investigation (FBI) contacted the United States Probation Office for the Northern District of Illinois as part of its investigation of a conspiracy to rob a bank. The FBI wanted information on petitioner, a suspect in the investigation. The probation office informed the U.S. Parole Commission of the FBI inquiry. This message from the FBI was the first the probation office and the Commission learned of petitioner's release and the resultant failure to report.

The FBI followed petitioner from March 1 to March 8, 1984 as part of its investigation of the bank robbery conspiracy. An FBI agent reported that during this time period petitioner would leave his residence each day and go to the home of Thomas Harty, where he met Harty and Charles DiLella. The three would then go to First Federal Savings and Loan Association of Chicago, where they would stand, without transacting business, and observe the comings and goings of the employees. On March 9, 1984 petitioner and DiLella followed a similar routine, but this time petitioner left his home wearing a "headpiece," which the court assumes is a wig. When they arrived at the bank they attempted unsuccessfully to approach bank employees leaving the bank, presumably to attempt to grab any money bags they held. The two-some then returned to their car where they were arrested. At the time of the arrest DiLella had a cap pistol in his pocket and petitioner carried a loaded 32 caliber revolver and two rolls of tape.

On March 12, 1984, after notice of the above events, the Parole Commission issued a parole violator warrant for petitioner. The warrant charged petitioner with failure to report for supervision, unauthorized possession of a firearm, and unauthorized association with a known felon. A preliminary interview was held on April 11, 1984 at which time petitioner denied all charges and refused to make any statements regarding the alleged violations. On May 3, 1984 the Commission issued its decision that probable cause existed for the alleged violations and that a revocation hearing would be held.

At the hearing petitioner admitted the charges of unauthorized possession of a firearm and unauthorized association with a felon. After the hearing the Commission decided to revoke parole. As part of this decision the Commission held that the time petitioner had spent "on parole" from October 28, 1976 through March 12, 1984 would not be credited to his sentence. Although petitioner did not appeal this decision to the Regional Commissioner, he did have a statutory interim hearing at the United States

---

1. The record does not explain what attempts were made or why they were unsuccessful.

Penitentiary in Leavenworth. After this hearing, the Commission informed petitioner there would be no change in the initial decision. Petitioner appealed this decision to the National Appeals Board, which affirmed.

In his petition for a writ of habeas corpus, Leszynski argues that the Parole Commission improperly refused to give him credit for the time after his release by Illinois when he lived in Chicago without reporting to his probation officer. In addition, he argues that the Parole Commission improperly considered the alleged bank robbery conspiracy as a reason for revoking parole since no formal charges were ever filed against him with regard to the charge. The court will consider the arguments seriatim.

### Parole Credit

■ The Parole Commission has jurisdiction over an individual until

> the date of the expiration of the maximum term or terms for which he was sentenced, except that ...
>
> > (c) In the case of any parolee found to have intentionally refused or failed to respond to any reasonable request, order, summons, or warrant of the Commission or any member or agent thereof, the jurisdiction of the Commission may be extended for the period during which the parolee so refused or failed to respond.

18 U.S.C. §§ 4210(b) and (c). The Parole Commission has promulgated various regulations in accordance with section 4210, including 28 C.F.R. § 2.52(c)(1) which provides that

> [a] parolee whose release is revoked by the Commission will receive credit on service of his sentence for time spent under supervision, except as provided below: (1) If the Commission finds that such parolee intentionally refused or failed to respond to any reasonable request, or-

der, summons or warrant of the Commission or any agent thereof, the Commission may order the forfeiture of the time during which the parolee so refused or failed to respond, and such time shall not be credited to service of the sentence.

In other words, if the Commission has jurisdiction over an individual pursuant to section 4210(c), the time spent avoiding the order of the Commission does not count toward service of the sentence. The government contends that since petitioner failed to report for probation as required by the general conditions of parole, the Parole Commission correctly found that petitioner's unsupervised time should not be credited to his sentence. Petitioner, on the other hand, argues that 28 C.F.R. § 2.52(c) does not apply to violations of general conditions of parole and is to be considered only if an individual refuses to obey an order made directly to him.

■ There is case law supporting petitioner's position. In *Papadakis v. Warden of the Metropolitan Correctional Center,* 822 F.2d 240, 243 (2d Cir.1987), the Second Circuit held "that simple failure to report [to a probation officer] does not automatically suspend parole credit." The court explained that "[a]bsent a regulation that effects an automatic extension of a parole term, a parolee remains on parole, *despite violation of general parole terms,* until parole is revoked according to established review procedures." *Id.* at 243–44.[2] Similarly, in *Toomey v. Young,* 449 F.Supp. 336 (D.Conn.1978), *aff'd without opinion,* 589 F.2d 123 (2d Cir.1979), the court held that a parolee's failure to file supervision reports and to report his arrest while on parole, both general conditions of his parole, was not the same as failing to respond to "any reasonable request, order, summons, or warrant of the commission" under 28 C.F.R. § 2.52(c)(1). Specifically, the court reasoned that while

> it may be argued that petitioner's failure to file supervision reports and to report

---

2. The court recognizes that *Papadakis* is distinguishable from the case at bar insofar as petitioner in that case reported daily to the trial court as required under the terms of his bail order. *Id.* at 244. This distinguishing fact does

not, however, change the import of the Second Circuit's holding that a violation of a general condition of parole does not suspend the running of the sentence.

his arrest constitute a failure to obey a Commission "order" insofar as he was required to do those things as a condition of parole, such a broad reading of "order" would cause the exception to swallow the rule. A more reasonable reading of the exception is that it applies to a parolee who disregards a "request, order, summons, or warrant" directed at him specifically, and not merely a general requirement of parole supervision.

*Id.* at 340. *Accord Bolt v. Elsea,* No. 79-C-2437 (N.D.Ill.1979) (unpublished opinion) (available on Lexis).

The government argues that the cases cited by petitioner were wrongly decided and that the courts issuing those decisions did not consider the common law principle that "[m]ere lapse of time without imprisonment or other restraint contemplated by the law does not constitute service of sentence." *Anderson v. Corall,* 263 U.S. 193, 194, 44 S.Ct. 43, 44, 68 L.Ed. 247 (1923).[3] The court agrees with this argument. In a situation such as this one, where petitioner has no concrete proof that he made any attempt to contact the probation officer listed on his certificate of parole, the court cannot believe that either Congress[4] or the Parole Commission, through its regulations, intended a result that would effectively excuse petitioner from serving nearly eight years of his sentence because, through some oversight, the probation office was not informed by Illinois that petitioner had been paroled from his state sentence. Indeed, the presence of conditions one and two appears to mandate exactly the opposite result by placing the onus on the parolee to notify the probation officer or the Department of Justice.

In addition, the court notes that it finds petitioner's argument that he was unable to make contact with the probation officer difficult to believe since a phone call or a visit to the probation office in the Northern District of Illinois could have easily been made considering petitioner was living in Chicago throughout the entire time period at issue. Consequently, the court finds that the Parole Commission correctly found that the 88 months during which petitioner did not report for probation should not have been credited to his sentence as time served.

### Bank Robbery Charge

Petitioner also argues that the Parole Commission incorrectly considered his participation in the alleged bank robbery conspiracy as a reason for revocation since no formal charges were ever brought in connection with that allegation. This argument is without merit. The Eighth Circuit has consistently held that the Parole Commission may find that an individual violated the terms of his parole based on charges that are later dismissed. *Mullen v. United States Parole Commission,* 756 F.2d 74, 75 (8th Cir.1985). *See also Perry v. U.S. Parole Commission,* 831 F.2d 811, 813 (8th Cir.1987), *cert. denied,* 485 U.S. 963, 108 S.Ct. 1230, 99 L.Ed.2d 429 (1988) (dismissed federal charge may properly be considered as a ground for parole revocation). Accordingly, it is

ORDERED that the petition for a writ of habeas corpus is denied.

---

**3.** The government also relies on *Caballery v. United States Parole Commission,* 673 F.2d 43 (2d Cir.), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982), where the court held that the time during which an individual sentenced under the Youth Corrections Act absconded from supervision was not counted as time served under the sentence. While this court agrees with the Second Circuit's explanation "that lapse of time does not constitute service of sentence and, hence, stops the sentence from running for that period during which the offender, through some fault of his own, has failed to serve his sentence," *id.* at 46, the court notes that *Caballery* is distinguishable from the case at bar since a warrant for arrest had been issued for the parolee in that case.

**4.** The court recognizes that the court in *Bolt* reached a contrary result. This court has read the legislative history mentioned in *Bolt* and does not agree that it supports the proposition advanced by petitioner.